IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARIENCE BUILDERS, INC., an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | No. |
| v. | ) ) ) ) | |
| SCOTT BALTES, | ) ) | |
| Defendant. | ) ) | |

FILED
FEBRUARY 13, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

PH

08 C 921

JUDGE BUCKLO
MAGISTRATE JUDGE COLE

## COMPLAINT

Plaintiff, Arience Builders, Inc. ("Plaintiff"), by its undersigned attorneys, complains of Defendant, Scott Baltes ("Defendant"), as follows:

### The Parties

1. Plaintiff is a corporate resident of the Northern District of Illinois with its principal place of business in Lisle, Illinois. At all times relevant Plaintiff was Defendant's employer pursuant to a "Designer's Employment Contract" between the parties dated September 19, 2007 (the Contract"). A copy of pertinent portions of said Contract is attached hereto as Exhibit "A."

2. Defendant is an individual resident of the Northern District of Illinois who at all times relevant was an employee of Defendant from or about September 19, 2007 until he was terminated for cause on or about December 18, 2007.

### Jurisdiction and Venue

3. Jurisdiction of the claims herein is pursuant to the federal Computer Fraud and Abuse Act, 18 U.S.C. §1030, *et seq.*, for relief and damages based on Defendant's unlawful conduct in violation thereof. The Court also has supplemental jurisdiction of Plaintiff's related

claims against Defendant for breach of contract, conversion/ misappropriation of trade secrets, and breaching his duty of loyalty to Plaintiff, under 28 U.S.C. § 1367.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) as Defendant's alleged unlawful and wrongful misconduct were committed within this District and both parties reside in this District.

### Salient Facts

5. As an employee of Plaintiff, Defendant was given access to a laptop computer used to analyze, retrieve, utilize and/or record proprietary and confidential customer, financial and other business-related information and files belonging to Plaintiff. Such included, but was not limited to: hundreds of pricing methods, appliance specifications, drawings, title blocks, elevations, works in progress, client scopes, plans, and other data belonging to Plaintiff and which Defendant utilized and collected in the course of his employment to identify potential customers, prepare construction bids and otherwise service accounts (hereafter collectively referred to as Plaintiff's "Proprietary Business Information").

6. In addition, Defendant expressly acknowledged and agreed in his employment Contract, at paragraph 6 (pp. 6-7), *inter alia,* that such Proprietary Business Information and data is confidential, that he will keep same confidential, and that such is and shall always remain Plaintiff's property. Plaintiff also agreed, at paragraph 5 of his Contract, to pay Plaintiff's reasonable attorney's fees in connection with any breach thereof.

7. During his employment with Plaintiff, *inter alia*, Defendant intentionally, wrongfully, and without Plaintiff's knowledge, approval or consent:

    a. Underbid, under-priced and/or undersold (without required company approval) Plaintiff's construction projects, including but not limited to the Boyd Project (approx. $25,537.72 loss); the Turone Project (approx. $6,965.44 loss); the Breen Project (approx. $22,211.78 loss); the Dietz Project (approx. $58,286 loss) and the Hornbeck Project (approx. $10,740 loss);

    b. Used Plaintiff's computer(s) to perform unauthorized work for his own personal financial benefit and/or that of Plaintiff's competitors;

    c. Failed to update Plaintiff's project calendar and/or rescheduled customer appointments; and

    d. Otherwise acted improperly, for his own personal financial gain, at Plaintiff's expense and to its detriment, in violation of his legal and contractual duties to Plaintiff.

8. Upon information and belief, at or just prior to the termination of his employment with Plaintiff, Defendant decided to go into business and/or compete with Plaintiff and Defendant first secretly and maliciously copied and converted Plaintiff's Proprietary Business Information on said laptop computer for his own use, and then deleted, caused to be deleted, and intended to delete, Plaintiff's Proprietary Business Information from said laptop computer.

9. At or just prior to his termination of employment with Plaintiff, Defendant also copied and/or deleted or caused to be deleted other confidential and proprietary business data, information and trade secrets on said laptop computer and belonging to Plaintiff (as well as data that would have revealed the improper conduct in which Defendant had engaged before he departed from Plaintiff) and critical to its current and future business operations.

10. Upon information and belief, since his termination of employment, Plaintiff has also wrongfully, intentionally and/or in violation of his Contract: (a) contacted (or causing to be contacted) and requesting that one or more of Plaintiff's customers curtail or cancel their business with Plaintiff; (b) solicited and/or accepted business from a past or existing customer of Plaintiff; and (c) otherwise acted in manner inconsistent with Plaintiff's best interests.

## COUNT I
## VIOLATION OF COMPUTER FRAUD AND ABUSE ACT
### (18 U.S.C. §1030, *et seq.*)

1. Plaintiff realleges paragraphs 1 through 9 above as Paragraph 1 of Count I.

2. The federal Computer Fraud and Abuse Act (the "Act") provides, *inter alia,* that whoever "knowingly causes the transmission of a…code or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer [a defined term that includes the laptop that Defendant used]," violates the Act. The Act further prohibits intentionally accessing a protected computer without authorization and which access recklessly causes damage. 18 U.S.C. §1030(a)(5)(A) (i), (ii) and (B)(i).

3. Defendant's misconduct, as alleged above, constituted a code and/or command by him which was unauthorized and caused deletion of data and/or damage to Plaintiff's protected laptop computer and/or the described computer data stored therein, in violation of one or more provisions of the Act.

4. As a direct and proximate result thereof, Plaintiff has suffered damages in an amount well over $5,000 and to be determined at trial. 18 U.S.C. §1030(g).

## COUNT II
## MISAPPROPRIATION/CONVERSION OF TRADE SECRETS
### (765 ILCS 1065/1 *et seq.*)

1. Plaintiff realleges paragraph 1 of Count I as Paragraph 1 of Count II.

2. Plaintiff's Proprietary Business Information, as alleged above, are trade secrets subject to protection under the Illinois Trade Secrets Act. 765 ILCS 1065/2 (d).

3. Plaintiff's Proprietary Business Information also contains, *inter alia,* "technical" information, "data" "method(s)" technique(s)" and other confidential information that is sufficiently secret to give Plaintiff a competitive business advantage. 765 ILCS 1065/2 (d).

4. Plaintiff also took reasonable measures under the circumstances to maintain the secrecy of this Proprietary Business Information, including not disclosing same to anyone other than an employee, such as Defendant, who agreed to keep same confidential and for use only in connection with Plaintiff's business dealings.

5. Plaintiff has violated the Illinois Trade Secret Act by, *inter alia*, copying, deleting and/or converting Plaintiff's Proprietary Business Information for his own use, and also by intentionally depriving Plaintiff access to same.

6. As a direct and proximate result of the foregoing, Plaintiff has suffered and will continue to suffer significant and/or irreparable damage, harm and loss.

## COUNT III
## BREACH OF CONTRACT

1. Plaintiff realleges paragraph 1 of Count I, and paragraph 10 above, as paragraph 1 of Count III.

2. Defendant's misconduct, as alleged above, was in breach of his contractual duties and obligations to Plaintiff.

3. As a direct and proximate result thereof, Plaintiff has suffered damages in an amount not less than $100,000 but to be determined at trial.

## COUNT IV
## BREACH OF DUTY OF LOYALTY

1. Plaintiff realleges paragraph 1 of Count III as paragraph 1 of Count IV.

2. As a matter of Illinois law, and by virtue of his express employment contract with Plaintiff, Defendant owed Plaintiff a duty of loyalty and was required to refrain from acting in a manner inconsistent with Plaintiff's business interests or to cause harm to Plaintiff or its business operations.

3. All of Defendant's misconduct, as alleged, breached said duty of loyalty owed to Plaintiff.

4. As a direct and proximate result of the foregoing breaches, Plaintiff has suffered and will continue to suffer financial loss in a sum of not less than $100,000 but in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Arience Builders prays for judgment against Defendant as follows:

A) An Order requiring Defendant to account for and/or repay all commissions and payments he received during the period in which he was employed at Plaintiff, and desist from further violations.

B) A Judgment Order against Defendant for all actual and compensatory damages caused to Plaintiff in an amount to be determined at trial.

C)  A Judgment Order against Defendant for punitive damages in an amount to be determined at trial.

D)  An Order entered requiring Defendant to pay Plaintiff's attorneys fees, legal expenses, costs and any other relief the Court deems just.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

**ARIENCE BUILDERS, INC.**

By: s/Randall B. Gold
*Attorney for Plaintiffs*

| | |
|---|---|
| Randall Gold (Illinois ARDC No. 6190918) | Joshua Karmel |
| Fox & Fox, S.C. | The Karmel Law Firm |
| 124 West Broadway | 221 N. LaSalle, Suite 1441 |
| Monona, WI 53716 | Chicago, IL 60603 |
| 608-258-9588 | 312-641-2910 |
| *rgoldlaw@aol.com* | *josh_karmellaw@ameritech.net* |

## DESIGNER'S EMPLOYMENT CONTRACT

THIS EMPLOYMENT AGREEMENT (the "Agreement") made and entered into on _9/19/07_ by and between _Scott Baltes_ (the "Employee), an individual residing at _404 S. Maple St._ and Arience Builders, Inc. (the "Company"), an Illinois corporation having offices at _4126 Main St., Lisle_.

WITNESSETH:

WHEREAS, the employee is willing to enter into this Agreement and employment with the Company upon the conditions and terms herein set forth;

NOW THEREFORE, for the valuable consideration set forth in this agreement and intending to be legally bound, the Employee and the Company mutually promise and agree as follows:

**1. Position and Duties.**
During the time this Agreement is in effect, the Company will employ the Employee and the Employee will accept such employment. The employee will devote substantially all of his time and attention to, and will use his best energies and abilities in the performance of his duties and responsibilities, and will not engage as director, officer, employee, partner, shareholder, or any other capacity, in any business which competes, conflicts or interferes with the performance of his duties hereunder in any way, or solicit, canvass or accept any business or transaction for any such competing business.

Employee shall wear the uniform provided by the company on sales appointments or calls, unless different attire is deemed appropriate for the job and/ or task and weather conditions.

Employee shall meet at the Company Office or other agreed to location to complete necessary work and meet with owners and superintendents as required.

Employee shall update the Company calendar on a daily basis with sales appointments, leads, and other important meeting and/ or task information vital to the sale and/ or maintenance of current or prospective projects. The Company shall be responsible for scheduling appointments or leads unless the Company directs Employee to make contact and set appointment. In either case, the Company shall notify the Employee with the information required to be present at the appointment on the correct day and time. As a general company policy, Employee and Company agree that the rescheduling of an initial appointment is to be avoided at all costs.

Employee will be entitled to vacation time granted that: 1. Employee gives a 2 week notice to the Company prior to departure, and 2. Employee coordinates any current jobs and or activities vital to the progress of those jobs prior to departure.


EXHIBIT A

1

## 2. Compensation, Incentives and Expenses.

For all services to be rendered by the Employee pursuant to Paragraph 1 of the Agreement, and in part of the consideration for the other obligations and promises of the Employee as set forth in this Agreement, the Company will compensate the Employee during the time he is employed by the Company as follows:

A) A commission based salary on each of the Employee's projects according to the following terms and conditions:
   1. Company and Employee determine the minimum percentage to be used on each individual job as follows:

| JOB COST | MINIMUM PERCENTAGE | MINIMUM SALE PRICE |
|---|---|---|
| $ 0 - $ 30,000 | 1.25 | Job Cost x 1.25 |
| $ 30,001 - $ 45,000 | 1.30 | Job Cost x 1.30 |
| $ 45,001 - $ 60,000 | 1.35 | Job Cost x 1.35 |
| $ 60,001 – and up | 1.38 | Job Cost x 1.38 |

The Minimum Percentage as shown above determines the Minimum Sale Price the job must be sold for unless agreed to otherwise between Company and Employee based on unique and/or competitive situations.

The difference in the dollar amount between the Job Cost and the Minimum Sale Price is awarded to the Company.

The remaining amount (the dollar difference between the Minimum Sale Price and the Actual Sale Price) is awarded to the employee in full up to a Maximum Percentage Sale of 1.58.

Any dollar amount of profit greater than the calculated Maximum Percentage Sale Price shall be shared evenly between the Company and the Employee (50% to Company, 50% to Employee).

If, when the job actually closes, the job cost is less than that initially calculated, and thus the Minimum Sale Price is affected (which in turn affects the payout schedule above), the amounts will be re-calculated and any additional commissions owed to the Employee (as calculated in the "AT CLOSE" section of the "COMMISSION CALCULATION FORM") will be awarded.

If, when the job actually closes, the job cost is for some reason greater than that initially calculated (see item #3 below) and thus the Minimum Sale Price is affected (which in turn affects the payout schedule above), the Company and Employee will discuss and assess the situation so that it is fair to both the Employee and the Company.

   2. Employee shall hand in the job price sheet to the Company with the sold job paperwork.
   3. Company and Employee will agree to the job cost evaluation and mutually fill out and approve/ sign a "COMMISSION CALCULATION FORM". This form will include the following information (see page 3):

## 4. Term

This agreement for employment by and between the parties shall be an agreement for employment at will commencing on the date hereof, subject to immediate termination by the Company without notice or cause. If Employee wishes to terminate this agreement they must provide One (1) month notice of this intent to the Company.

Nothing contained in this Agreement shall be construed to prevent the Company from terminating the employment of the Employee hereunder at any time for cause. As used in this Agreement, "termination for cause" shall mean a termination based upon the dishonesty, gross negligence, incompetence or moral turpitude of the Employee or any failure to perform his duties hereunder or otherwise comply with and observe the covenants and agreements made by him herein.

## 5. Non-Competition

Unless express written exception to this paragraph is provided by executive officers of the Company, during the time of the Employee's employment by the Company, and for a period of One (1) year after termination, the Employee shall not, directly or indirectly, acting alone or in conjunction with others:
A) Request any customers of any business then being conducted by the Company to curtail or cancel their business with the Company;
B) Solicit, canvass or accept any business or transaction for any other person, firm or corporation or business similar to the business of the Company, from any past or existing customers of the Company;
C) Induce, or attempt to influence, any employee of the Company to terminate employment with the Company or to enter into any employment or other business relationship with any other person (including the Employee), firm or corporation; or
D) Act or conduct him or herself in any manner which is contrary to the best interests of the Company.

The Employee recognizes that immediate and irreparable damage will result to the Company if the Employee breaches any of the terms and conditions of this Paragraph 4 and, accordingly, the Employee hereby consents to the entry by any court of competent jurisdiction of an injunction against him to restrain any such breach, in addition to any other remedies or claims for money or damages which the Company may seek. The Employee represents and warrants to the Company his experience and capabilities are such that he can obtain employment in business without breaching the terms and conditions of this Paragraph 5 (and the enforcement thereof by injection or otherwise) will not prevent him from earning a livelihood. The Employee agrees to pay any and all reasonable attorney fees sustained by the Company in connection with any breach of this Agreement.

## 6. Trade Secrets/ Confidential Information/ Intellectual Property

The Employee agrees that he will not at any time or in any manner divulge, disclose or communicate to any person, firm or corporation any trade, technical or technical or technological secrets; any details of the Company's organization or business affairs, its manner of operation, its plans, processes, and/ or other data; any names of past or present customers of the Company; or any other information relating to the business of the Company, without regard to whether all of the foregoing matters will be deemed confidential, material, or important. The Employee further

agrees that all leads, files, forms, documents and logos created or used in the performance of his or her duties during the course of his or her employment are the property of the Company, and the downloading, copying or distribution of any of these or similar items without the express approval of the Company can result in immediate termination of employment and possible prosecution.

With respect to the foregoing, the Employee hereby stipulates and agrees that the same are confidential, material, and important, and any breach of this paragraph 6 will adversely affect the business of the Company, its effective and successful management, and its inherent good will.

### 7. Assignment

The benefits of this Agreement are and shall be personal to the Employee, and none thereof shall inure to the benefit of his heirs, personal representatives, or assigns. The obligations and duties of the Employee hereunder shall be personal and not assignable or delegable by him in any manner, whatsoever. This Agreement shall be binding upon and inure to the benefit of the Company and it shall be assignable by the Company to any entity which may acquire substantially all of the business and assets of the Company, or with or into which the Company may be merged or consolidated.

### 8. Entire Agreement, Amendment

This agreement constitutes the entire agreement between the parties with respect to the employment of the Employee by the Company and shall be deemed effective on the date of signing. Per discussion between the Employee and the Company, the previous written agreement between the Employee and the Company will be held effective for any and all jobs and change orders sold prior to the date of signing of this written Agreement. For all jobs sold prior to this Agreement but not yet completed (currently in progress or waiting to start construction), any and all change orders not yet sold shall abide by the new regulations set forth in this Agreement according to paragraph 2A5. This Agreement may be amended, modified or waived only by an instrument in writing signed by the Employee and an authorized executive officer of the Company.

### 9. General

The headings of the Articles and paragraphs of this Agreement are for the convenience of reference and not to be used to interpret or construe any provisions of this Agreement. This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written.

_[signature]_ 9/19/07

_[signature]_ 9/19/07

Dean Holloway 9/19/07

7