## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ARIENCE BUILDERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.08 C 921 |
| | ) | |
| SCOTT BALTES, | ) | Judge Bucklo |
| | ) | Magistrate Judge Cole |
| Defendant. | ) | |

### MOTION TO DISMISS PURSUANT TO 12(b)(1) AND (6)

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), Defendant respectfully moves this Honorable Court to dismiss Count I of Plaintiff's Complaint pursuant to Rule 12(b)(6) and dismiss Counts II, III, and IV pursuant to Federal Rule of Civil Procedure 12(b)(1). In support of his motion, Defendant states as follows:

1.     Both Plaintiff and Defendant are Illinois residents (Complaint at ¶ 1-2), and Counts II, III, and IV purport to allege Illinois common law claims for misappropriation of trade secrets, breach of contract, and breach of duty of loyalty, respectively, arising out of the Defendant's employment with the Plaintiff (*Id.* At ¶ 5 - 10).

2.     In Count I of its Complaint, Plaintiff purports to allege a claim for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("the Act"). The subject matter jurisdiction of this Court is premised entirely upon this Count.

3.     A civil action pursuant to the Act "may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B). Damages for a violation involving only conduct described in subsection (a)(5)(B)(i) are limited to economic damages." 18 U.S.C. § 1030(g). Plaintiff purports to base its claim against the Defendant on 18

U.S.C. § 1030 (a)(5)(B)(I) claiming they "have suffered damages in an amount well over $5,000". (Complaint at ¶ 2 & 4 of Count I).

4.      The Plaintiff claims that the misconduct constituted a code or command...which was unauthorized and caused a deletion of data and/or damage to Plaintiff's protected laptop computer and/or the described computer data stored therein, in violation of one or more provisions of the Act. While Plaintiff does not specifically identify which section of the Act it purports to base its claims upon, Plaintiff appears to be attempting to invoke subsection(a)(5)(A)(I), which proscribes, in relevant part that a violation occurs when a person "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer."

5.      If Plaintiff is alleging damage under subsection(a)(5)(A)(I), per statute, they must also allege a transmission. As the Court ruled in Airport Centers, LLC v. Citrin, 440 F.3d 418 (7th Cir. 2006), pressing a delete or erase key in fact transmits a command, but it might be stretching the statute too far (especially since it provides criminal as well as civil sanctions for its violation) to consider any typing on a computer keyboard to be a form of "transmission" just because it transmits a command to the computer." Unlike Airport Centers, there is no allegation here of any secure-erase program to the laptop,  any assertion that the data on the laptop has been made unrecoverable, or any other allegation that the data was not available on their database or at another location. In fact, there is no allegation concerning a transmission as defined under the Act and as interpreted by this court under Airport Centers at all. As such, the allegations of damages in Plaintiff's Complaint are not the type of damage that is contemplated as recoverable under the Act.

6.      If Plaintiff is instead alleging that the damage occurred though theft of data, as it

seems to imply in ¶ 8 - 10 of its Complaint, this Court only needs to look towards its own recent decision made in Garelli Wong & Associates, Inc. V. William M. Nichols, 1008 U.S. Dist. LEXIS 3288, at 17 (attached as Exhibit A), in which it found that "trade secret ...misappropriati[ion] through the use of a computer...alone can[not] show "impairment to the integrity or availability of data, a program, a system, or information." As such no damages are properly pled in the current case at hand.

7.      Further, Plaintiff's Complaint is at odds with the this Court without further elaborating its loss. As discussed in Wong, "a Plaintiff must provide the grounds of his entitlement to relief with more than just labels and conclusions, and a formalistic recitation of a cause of action's elements will not do". (*Id.* At 18). Here, just as in Wong, Plaintiff just states that they have suffered damages, without detailing their loss at all.

8.      In the present case, Count 1 alleges nothing more than the possible copying of data or the possible deletion of data. Each allegation of the Plaintiff as to damages under the Act are either based upon information or belief, or put in terms of "Plaintiff copied and/or deleted or cause to be deleted...". (See Complaint at ¶ 8 - 10). As such they just parrot the elements required under the Act without stating any damage or loss of substance. Without stating recoverable damages or without alleging a cognizable loss, Plaintiff has failed to state a claim upon which relief can be granted, as "both damage and loss are necessary to state a claim under the CFAA.". *(See Wong. at 19.)*

9.      Since Count I is insufficient to state a cause of action under the Act and no other basis for federal subject matter jurisdiction exists, Counts II, III, and IV of Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

10.    In this circuit, "the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on their merits." Kennedy v. Schoenberg, Fisher & Newman, Ltd., 140 F. 3d 716, 727 (7th Cir. 1998).

11.    That there is a case pending in the Circuit Court of DuPage County between the parties, having been brought by the Defendant, and concerning breach of contract and violations of certain statutes relating to Defendant's employment with the Plaintiff (Case No. 2008 L 000227, a copy of which is attached and marked as Exhibit B). If Plaintiff's state law counts were to be dismissed there would no prejudice to the Plaintiff for its state law claims to be heard in the same forum. Further, this Court has discretion under Hixon v. Sherwin-Williams Co, 671 F. 2d 1005, 1009 to dismiss the state issues that substantially predominate over the federal claim in terms of the burden of proof or the scope of issues raised, as in the current case.

WHEREFORE, for all of the reasons set forth herein, Defendant respectfully requests this Honorable Court to dismiss Count I of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and dismiss Counts II, III, and IV of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

Dated: March 24, 2008

Respectfully submitted,

By: /s/ Jeffrey S. Marks

Jeffrey S. Marks
Attorney #6290132
Alan H. Shifrin & Associates, LLC
Attorneys for Plaintiff
3315 Algonquin Road, Suite 202
Rolling Meadows, IL  60008
(847) 222-0500

## CERTIFICATE OF SERVICE

I, Jeffrey S. Marks, an attorney, certify that service of Defendant Motion to Dismiss Pursuant to 12(b)(1) AND (6) on Plaintiffs' counsel was accomplished pursuant to ECF.

By:/s/ Jeffrey S. Marks

# EXHIBIT A

LEXSEE 2008 U.S. DIST. LEXIS 3288

## GARELLI WONG & ASSOCIATES, INC., Plaintiffs, vs. WILLIAM M. NICHOLS, Defendant.

### 07 C 6227

## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

### 2008 U.S. Dist. LEXIS 3288

**January 16, 2008, Decided**
**January 16, 2008, Filed**

**COUNSEL:** [*1] For Garelli Wong & Associates, Inc., Plaintiff: David N. Michael, Mark Douglas Brookstein, Gould & Ratner, Chicago, IL; Robert G. Riegel, Jr., Fowler White Boggs Banker PA, Jacksonville, FL.

For William M. Nichols, Defendant: Daniel Patrick Hogan, LEAD ATTORNEY, McCabe & Hogan, Palatine, IL.

**JUDGES:** Charles P. Kocoras, United States District Judge.

**OPINION BY:** Charles P. Kocoras

**OPINION**

### MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Before this Court is Defendant's motion to dismiss Plaintiff's three-count Complaint. For the following reasons, Defendant's motion is granted.

### BACKGROUND

According to the allegations of the complaint, which we must accept as true for purposes of this motion, Plaintiff Garelli Wong and Associates, Inc. ("Garelli Wong") is an Illinois corporation. Garelli Wong operates three Illinois offices located in the cities of Chicago, Schaumburg, and Oakbrook. Garelli Wong provides temporary and permanent accounting and financial personnel and services to its clients. The company has devoted substantial time and expense to identify clients receptive to Garelli Wong's services by finding the decision makers within their clients' organizations, cultivating their client relationships and learning [*2] their clients' needs and preferences, determining how those needs match the capabilities of its employees, and by working out client-specific pricing and service arrangements.

Garelli Wong employees who are temporarily assigned to work for clients are referred to as its "consultants," and prospective consultants are termed "candidates." Garelli Wong created a database ("the Database") that contains candidate and client activity tracking information (including billing rates; margins; candidate identities and status; employee information; client identities and the names of client contacts; decision makers; and requirements). Garelli Wong does not share this information with its competitors but rather has made efforts to maintain the confidentiality of the information contained in the Database. The Database is housed in a secure server and can only be accessed by an authorized user who enters a personalized password. Garelli Wong's employees use the information in the Database to expand client relationships and build goodwill.

Around April 2006, MPS Group, Inc. ("MPS") purchased and became the owner of Garelli Wong. As owner, MPS acquired Garelli Wong's existing assets, which included any [*3] employment agreements that Garelli Wong had with its employees. Defendant William Nichols ("Nichols") was one such employee who had entered into an employment agreement with Garelli

Wong prior to the purchase.

Nichols, an Illinois resident, began working as a Senior Staffing Consultant out of Garelli Wong's Chicago office around December 1, 2003. In that capacity, Nichols was Garelli Wong's primary contact with certain of its clients and prospective clients. Nichols met with candidates and clients and used the Database in an effort to match the candidates' and clients' needs, preferences, and requirements. In doing so, Nichols developed personal relationships with certain clients, employees, candidates, and consultants whom Garelli Wong recruited. From these relationships, Nichols acquired knowledge about the clients' hiring managers, who according to Garelli Wong are often the most important client contacts. Nichols' employment with Garelli Wong also allowed him to obtain information about Garelli Wong's pool of screened consultants who serve its clients, including the rates Garelli Wong pays to its various consultants, the mark-up on those rates, and the flexibility Garelli Wong has [*4] for different clients on project-specific, or sometimes client-specific, placement.

When Nichols began working for Garelli Wong he signed a Confidentiality and Non-Solicitation Agreement ("the Agreement") "that would be governed by, construed, and enforced in accordance with the laws of the state of Illinois." Paragraph 2 of the Agreement states:

> Except as permitted by this Agreement or with the written consent of the Company, the Employee shall not at any time during or after employment with the Company, divulge, disclose or communicate, directly or indirectly, to any person, corporation or other entity, or use for his/her own benefit or for the benefit of anyone other than the Company, any of the Company's trade secrets or confidential or proprietary information, including, but not limited to, Client or Potential Client identities and contacts; Client or Potential Client lists; Client or Potential Client financial, business or personal information; other information relating to Client or Potential Client accounts, feedback or directions; financial and business information relating to the Company and its transactions; and any other confidential information relating to

the Company, its [*5] business, or its Clients or Potential Clients, including the Company's candidate database.

> Employee agrees that all confidential and proprietary information shall belong to and be the sole and exclusive property of the Company.

Paragraph 3 of the Agreement states:

> Immediately upon termination of employment with the Company, the Employee shall return to the Company all materials that relate to the Company, its business, its Clients or Potential Clients which came into the Employee's possession during the Employee's employment by the Company.

Paragraph 4 of the Agreement states that for the six-month period following the end of Nichols' employment with Garelli Wong, he would not, for the benefit of any "Competitive Business":

> directly or indirectly perform services for or solicit (or assist other persons or entities to perform services for, or solicit) any Client for which the Employee, during the one-year period prior to the termination of the Employee's employment with the Company: 1) performed services, 2) had any direct Client or Potential client, or 3) received financial credit for any placements.

After MPS purchased Garelli Wong, Nichols entered into a Restricted Stock Agreement (the [*6] "RSA") with MPS. The RSA specifically provided that, for purposes of the restrictive covenants set forth in the RSA, the term "Employer" included subsidiaries or affiliates of MPS. As per the RSA, Nichols was entitled to 1,500 unvested shares of MPS Group's common stock, which had a vesting date (the "Vesting Date") of March 7, 2008. If Nichols ended his employment prior to the Vesting Date, he forfeited all 1,500 shares. Nichols also agreed to a restrictive covenant clause in the RSA, which states, in part:

> In consideration of being offered the Award herein, Employee hereby agrees

that during his...employment with the Company...and for the period of twelve (12) months immediately following the termination of Employee's employment such that Employee is no longer employed in any capacity with the...Company...Employee shall not, either directly or indirectly...engage in or assist others in...:

(c) entering into, engaging in, being employed by, being connected to, consulting or rendering services for, any enterprise that is offering or performing services similar to, or in competition with, business or services offered or performed by Employer at the time of the termination of Employee's employment [*7] from the Employer...within a 50 square mile radius of each office to which Employee was assigned or, if in management, each office or offices under Employee's managerial authority, at any time during the twelve (12) month period immediately preceding the termination of Employee's employment from the Employer...

On September 28, 2007, Nichols voluntarily resigned from employment with Garelli Wong. According to the complaint, Nichols is currently working in direct competition with Garelli Wong. Prior to his resignation, Garelli Wong alleges that Nichols compiled significant amounts of Garelli Wong's confidential and proprietary client and candidate information by entering the Database without proper authority to do so. According to Garelli Wong, Nichols attempted to send this information to his personal e-mail account and/or copied it for his personal use.

Garelli Wong alleges that immediately following Nichols' resignation, he contacted a Garelli Wong candidate and attempted to recruit that candidate for a position on behalf of his new and current employer. In order to contact that candidate, Nichols used information to which only Garelli Wong employees had access.

In October 2007, Garelli [*8] Wong learned that Nichols had solicited and attempted to recruit a Garelli Wong candidate. Garelli Wong also learned that Nichols contacted or was trying to contact one or more Garelli

Wong clients to set up meetings. Garelli Wong believes that Nichols is now working for a new company in a capacity similar to the position he held with Garelli Wong and is using the confidential and proprietary information he obtained from Garelli Wong to contact, solicit, recruit, or attempt to solicit and recruit Garelli Wong's candidates in order to compete against Garelli Wong for those clients.

On November 2, 2007, Garelli Wong filed a three-count complaint against Nichols. The complaint sets out two breach of contract claims and one violation of federal law. The first count alleges that Nichols violated the Agreement he entered into with Garelli Wong. The second count alleges Nichols breached the RSA he entered into with MPS. The final count states that Nichols violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 et seq. Nichols filed a motion to dismiss Garelli Wong's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Nichols argues that Garelli Wong's CFAA [*9] count fails to state a claim upon which relief can be granted and contends that if the CFAA claim is dismissed, Garelli Wong's two remaining counts should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because federal jurisdiction would not be present.

**LEGAL STANDARD**

Fed. R. Civ. P. 12(b)(6) evaluates the legal sufficiency of a plaintiff's complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff, construe all allegations of a complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). To be cognizable, the factual allegations contained within a complaint must raise a claim for relief "above the speculative level." *Bell Atlantic Corp. v. Twombly*, -- U.S. --, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). However, a pleading need only convey enough information to allow the defendant to understand the gravamen of the complaint. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999).

The [*10] purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is to dismiss claims over

which a federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon a federal court. *In re Chicago, Rock Island & Pac. R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). The plaintiff bears the burden of establishing that the jurisdiction requirements have been met. *see Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987). When a defendant moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1), the plaintiff must support its allegations with competent proof of jurisdictional facts. *Thomson v. Gaskillwsa*, 315 U.S. 442, 446, 62 S. Ct. 673, 86 L. Ed. 951 (1942).

With these principles in mind, we consider the instant motion.

## DISCUSSION

### I. Computer Fraud and Abuse Act

The subject matter jurisdiction of Garelli Wong's complaint is premised entirely upon its CFAA count. As such, we will look to the sufficiency of this claim first. As Nichols correctly points out, the complaint does not specify the sections of the statute upon which it relies. However, 18 U.S.C. § 1030(g) mandates that a civil action pursuant to the CFAA "may be brought only if the conduct involves 1 [*11] of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B)." The allegations in Garelli Wong's complaint contain language that could apply to violations of § 1030(a)(5)(B)(i) as it pertains to §1030(a)(5)(A)(i), (ii), and (iii):

> Whoever-
>
> (5)(A)(i) knowingly causes the transmission of...information...and as a result of such conduct, intentionally causes **damage** without authorization, to a protected computer;
>
> (ii) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes **damage;** or

> (iii) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes **damage...; and**
>
> (5)(B)(i) by conduct described in clause (i), (ii), or (iii) of subparagraph (A), caused ... **loss** to 1 or more persons during any 1-year period...aggregating at least $ 5,000 in value.

(emphasis added).

A point of contention between the parties exists at to whether a plaintiff must allege both damage and loss in order to sufficiently plead a civil action under the CFAA or whether pleading damage or loss is enough. A thorough reading of the text above shows that it is necessary for a plaintiff to plead both damage [*12] and loss in order to properly allege a civil CFAA violation.

The CFAA defines "damage" as "impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). "Loss" is defined under the CFAA to mean:

> any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

18 U.S.C. § 1030(e)(11).

Incorporating these definitions into its argument, Nichols contends that his alleged unauthorized acts of copying and emailing Garelli Wong's computer files did not impair the integrity or availability of the information in the Database and did not cause any interruption to the computer service. More pointedly, Nichols' argument is that one cannot be held civilly liable under the CFAA for copying information from a computer without authority

to do so; a violation requires more.

## A. Damage

According to Nichols, Garelli Wong's CFAA count should be dismissed because the complaint does not and cannot allege [*13] damage or loss as defined by the CFAA. Nichols cites *Airport Centers, LLC v. Citrin* in support of his position that the unauthorized copying and emailing of files from a computer is not enough to form the basis of a civil action under the CFAA. 440 F.3d 418 (7th Cir. 2006). In *Citrin,* the defendant was employed by the plaintiff and given a company laptop to use and record data he collected while working. *Id.* at 419. The defendant then quit his job with the plaintiff and began working for himself. *Id.* Before returning the laptop to the plaintiff, the defendant deleted all the data on it and installed a secure-erasure program to prevent recovery of the deleted files. *Id.* In finding that the plaintiff had sufficiently stated a civil claim under the CFAA, the Seventh Circuit confirmed that installing a program intended to erase and delete files is sufficient to show damage as it is defined under the CFAA because the installation of such a program impairs the integrity or availability of data, programs, or information on the computer. *Id.*

Although the principal discussion in *Citrin* involved the meaning of the term "transmission" as used in § 1030(a)(5)(B)(i), the damage referred to the computer [*14] files (as opposed to the physical computer), that is, the deletion of data stored in the computer. The statutory requirement of *damage* was satisfied since the defendant's acts impaired the integrity or availability of data. No similar allegation is made in the instant case.

In further support of his position, Nichols cites *ResDev v. Lot Builders* and *Worldspan v. Orbitz, LLC,* two unpublished cases, which discuss "integrity" as it is used in the CFAA's definition of damage. 2005 U.S. Dist. LEXIS 19099, 2005 WL 1924743 (M.D. Fla. Aug. 10, 2005); 2006 U.S. Dist. LEXIS 26153, 2006 WL 1069128 (N.D. Ill. April. 19, 2006). We believe the discussion of "integrity" in these cases lends guidance in the instant matter. In *ResDev,* defendants allegedly visited their former employer's website and accessed information that was not password protected. 2005 U.S. Dist. LEXIS 19099, 2005 WL 1924743 at *1. The plaintiff in *ResDev* sought to recover damages under the CFAA based on the defendants viewing of the information and the information's alleged trade secret value. *Id.* Ultimately,

the *ResDev* court held that the CFAA's use of the word "integrity" to define damage required "some diminution in the completeness or useability of data or information on a computer system" and concluded that [*15] the defendants' alleged conduct "did not come within the CFAA's meaning[;]" and therefore did not violate the CFAA. 2005 U.S. Dist. LEXIS 19099, [WL] at *5.

The *Orbitz* court's analysis of the *ResDev* court's discussion of "integrity" is also worth mentioning. In *Orbitz,* the court found that the plaintiff's complaint "merely parrot[ed] the 'causing damage' text of the CFAA in conclusory fashion and fail[ed] to allege any facts indicating that the completeness, useability, or availability of [the plaintiff's] data was impaired." *Orbitz,* 2006 U.S. Dist. LEXIS 26153, 2006 WL 1069128 at *5. As a result, the *Orbitz* court rejected the plaintiff's argument that "the mere 'taking of information' constitute[d] 'damage' under the CFAA." *Id.*

Garelli Wong cites several district court cases in opposition of Nichols' arguments. However, we find none of these cases persuasive. First, Garelli Wong cites *George S. May Intern. Co. v. Hostetler,* a 2004 case decided by this court, where we held: "we see no principled reason, nor has [defendant] offered one, why infringement of copyrighted material taken from a protected computer system would not qualify as impairment of the integrity of the copyrighted information." 2004 U.S. Dist. LEXIS 9740, 2004 WL 1197395, *4. In *Hostetler,* the plaintiff [*16] alleged that the defendant used his access to his company's computer system to take several copyrighted documents with him when he ended his employment and, then, later used these documents to the detriment of his former employer. 2004 U.S. Dist. LEXIS 9740, [WL] at *3. As our holding in *Hostetler* makes clear, the defendant in *Hostetler* did not provide us with any reasons on which to base a finding in its favor. 2004 U.S. Dist. LEXIS 9740, [WL] at *4. We also point out that the CFAA was amended after the decision in *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.,* 119 F. Supp. 2d 1121. (W.D.Wash. 2000), a case relied on in *Hostetler.* Such reliance is no longer compelling in light of the statutory amendments and other cases decided post-amendment.

Similarly, we are not inclined to follow *Pacific Aerospace & Electronics, Inc. v. Taylor,* which Garelli Wong cites to show that misappropriation is considered to be damage or loss under the CFAA. The *Taylor* court

conducted an extensive review of the CFAA before it explained that "caselaw supports an employer's use of the CFAA's civil remedies to sue [its] former employees and their new companies who seek a competitive edge through wrongful use of information from the former employer's [*17] computer systems." 295 F. Supp. 2d 1188, 1195 (E.D.Wash. 2003). The conclusion reached in *Taylor* does not take into account that a civil violation of the CFAA requires "impairment to the integrity or availability of data, a program, a system, or information" and "interruption in service." 18 U.S.C. § 1030. Allegations of trade secret theft and misappropriation do not suggest such a violation. Furthermore, the *Taylor* court partly based its conclusion on *Shurgard,* which we no longer find influential for reasons given above.

Ultimately, we find that *ResDev* and *Orbitz* set out the correct analysis to be performed in deciding whether allegations are sufficient to properly plead damage under the CFAA. Though Garelli Wong would like us to believe that recent amendments to the CFAA are intended to expand the use of the CFAA to cases where a trade secret has been misappropriated through the use of a computer, we do not believe that such conduct alone can show "impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Therefore, we conclude that Garelli Wong has failed to sufficiently plead damage under the CFAA.

**B. Loss**

As previously mentioned, [*18] Nichols believes that Garelli Wong's CFAA count should be dismissed because the complaint does not and cannot allege loss as defined by the CFAA. Garelli Wong cites *Patriot Homes, Inc. v. Forest River Housing, Inc.* for the proposition that it asserted a cognizable claim under the CFAA by alleging that it suffered "losses" in excess of $ 5,000 as a result of Nichols' conduct. 2006 U.S. Dist. LEXIS 45486, 2006 WL 1752143, *4 (N.D. Ind. June 21, 2006). Nichols counters with the discussion set out in *ResDev* that it is not enough to simply allege any monetary expenditure to assert a cognizable claim under the CFAA; instead, "loss" is limited to costs that are "directly associated with, or with addressing, an unauthorized computer-access event." 2005 U.S. Dist. LEXIS 19099, 2005 WL 1924743 at *4. The Supreme Court recently clarified that to properly plead a cause of action, a plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief' [with] more than labels and conclusions, and a formulaic recitation of a

cause of action's elements will not do." *Twombly,* 127 S. Ct. at 1959. In its current form, the complaint states only that "Defendant's conduct caused losses to Garelli Wong in excess of $ 5,000" with no further elaboration. While we [*19] agree with Nichols that Garelli Wong does not presently allege loss, we disagree that it cannot do so. Conceivably, Garelli Wong could provide the necessary information in an amended complaint (consistent with its obligations under Fed. R. Civ. P. 11 that such an allegation is made only after reasonable inquiry into its factual foundation). However, in light of our conclusions that both damage and loss are necessary to state a cause of action under the CFAA and that Garelli Wong cannot allege damage, dismissal of Count III is warranted even though Garelli Wong could address the deficiencies within its allegations of loss in an amended complaint.

**II. State Law Claims**

The sole jurisdictional basis asserted for Counts I and II is the supplementary jurisdiction provided by 28 U.S.C. § 1367(a). When a district court dismisses all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over the remaining claims. 28 U.S.C. § 1367(c)(3). In our circuit, the preferred course of action is to relinquish jurisdiction in such circumstances without good reasons to do otherwise. *Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 727 (7th Cir. 1998). [*20] Garelli Wong has not offered a compelling reason for us to maintain jurisdiction over its state-law claims, and in light of the early stage of this case, we will decline to exercise jurisdiction over Counts I and II. Therefore, those counts are dismissed for lack of subject matter jurisdiction.

**CONCLUSION**

For the foregoing reasons, Count III of Garelli Wong's complaint is dismissed for failure to state a claim. Counts I and II are dismissed for lack of subject matter jurisdiction.

/s/ Charles P. Kocoras

Charles P. Kocoras

United States District Judge

Dated: January 16, 2008

# EXHIBIT B

STATE OF ILLINOIS          )
                           )
COUNTY OF DUPAGE           )

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN THE COUNTY OF DUPAGE, ILLINOIS

SCOTT BALTES,                     )  2008L000227
               Plaintiff,         )
                                  )  Status Date: 06/27/08
v.                                )  Mgmt Date: 06/18/08
                                  )  NO.
                                  )  Assigned To: 2010
DAN HOLLOWAY, RON SIRIANO         )  Amount Claimed: in excess of the
both individually and d/b/a       )
ARIENCE BUILDERS, INC.,           )
               Defendants.        )

**FILED**
Feb 28 2008 - 12:34 PM
_Chris Kachiroubas_
CLERK OF THE
18TH JUDICIAL CIRCUIT
DU PAGE COUNTY ILLINOIS

## VERIFIED COMPLAINT

NOW COMES the Plaintiff, SCOTT BALTES, by and through his attorneys, Alan H. Shifrin & Associates, LLC, and for his Complaint against the Defendants, DAN HOLLOWAY, RON SIRIANO, both individually and d/b/a ARIENCE BUILDERS INC. and states as follows:

## FACTS COMMON TO ALL COUNTS

1. That all times relevant hereto, Plaintiff resided in Cook County, Illinois.

2. That all times relevant hereto, Defendants both individually and d/b/a as ARIENCE BUILDERS, INC. (hereinafter "ARIENCE") were operating a business for the purpose of selling and constructing of houses, and selling and constructing improvements to houses, whose principal place of business is located in DuPage County, Illinois (a copy of the Illinois Secretary of State Corporation File Detail Report is attached hereto and made a part of as Exhibit A).

3. That from December 13, 2006 until September 18, 2007, Defendants, each and every one of them, retained Plaintiff as an independent contractor pursuant to an oral agreement to perform architectural and sales services for the entity commonly known as ARIENCE BUILDERS, INC.

4. That the relationship as an independent contractor was substituted for an employment relationship as an employee on or about the 19th day of September, 2007, pursuant to a written agreement, a copy of which is attached and marked as Exhibit B for identification. That the terms of the relationship are incorporated from the attached Exhibit B.

5. That from September 19, 2007 until December 19, 2007, Defendant employed Plaintiff to perform architectural and sales services as an employee.

6. That Defendant terminated Plaintiff's employment on December 19, 2007.

7. That at all relevant times, Plaintiff was to be paid salaries and commissions for his work according to a percentage-based formula for each project or change order sold.

8. That at all times relevant to the relationship as an independent contractor and later as an employee, the entity, ARIENCE BUILDERS INC. was an involuntarily dissolved corporation and that all acts by and between the Defendants Dan HOLLOWAY and RON SIRIANO were done on a personal and not a corporate basis.

9. That at the time of the termination, there was in place contracts accepted and approved by the Defendants, each and every one requiring compensation pursuant to Exhibit B due and owing to Plaintiff.

## COUNT I - VIOLATION OF ILLINOIS WAGE PAYMENT AND COLLECTION ACT, 820 ILCS 115/5, FOR SALARY AND COMMISSIONS DUE

10. That Plaintiff realleges and incorporates Paragraphs 1-9 as if he had restated them in their entirety.

11. That 820 ILCS 115/5 states that, "Every employer shall pay the final compensation of separated employees in full at the time of separation, if possible, but in no case later than the next regularly scheduled payday for each employee."

12. That on or about both December 26, 2007 and January 2, 2008, Plaintiff has demanded an accounting and final payment of his compensation.

13. That 820 ILCS 115/5 further states that, "Where such employee requests in writing that his final compensation be paid by check and mailed to him, the employer shall comply with this request." (See attached Exhibit C being a written demand for such payment.)

14. That Defendants have willfully and knowingly failed to pay Plaintiff his final compensation.

15. That 820 ILCS 115/13 states that, "Any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation."

16. That on or about the 28th day of January, 2008, ARIENCE CONSTRUCTION INC. did reinstate itself as a licensed Illinois Corporation in good standing.

17. That Defendants HOLLOWAY and SIRIANO both individually and as agents for the company ARIENCE, made all business decisions for Defendant ARIENCE, and they knowingly violated the provisions of the Illinois Wage Payment and Collection Act.

18. That Defendants HOLLOWAY and SIRIANO should be held to be the employer of Plaintiff and should be held personally liable for violations of this Act.

WHEREFORE, Plaintiff, SCOTT BALTES, pursuant to 820 ILCS 115/5, prays that this Court enter a Judgment in its favor and against Defendants, DAN HOLLOWAY, RON SIRIANO individually and d/b/a ARIENCE BUILDERS, INC, as follows:

 A. For an award in the amount of Plaintiff's unpaid compensation;

 B. For Plaintiff's costs of suit, as provided by statute;

 C. For Defendants to account for all services being provided from customers procured by Plaintiff.

 D. For Plaintiff's reasonable attorneys fees, as provided by statute;

 E. For such other or further relief as this Court deems just and equitable.

## COUNT II - VIOLATION OF ILLINOIS SALES REPRESENTATIVE ACT, 820 ILCS 120/1, FOR COMMISSIONS DUE

19. That Plaintiff realleges and incorporates Paragraphs 1-9 as if he had restated them in their entirety.

20. That 820 ILCS 120/2 states that, "All commissions due at the time of termination of a contract between a sales representative and principal shall be paid within 13 days of termination, and commissions that become due after termination shall be paid within 13 days of the date on which such commissions become due."

21. That on or about both December 19, 2007 and January 2, 2008, Plaintiff has requested payment of his final compensation (see Exhibit C).

22. That 820 ILCS 120/3 states that, "A principal who fails to comply with the provisions of Section 2 concerning timely payment or with any contractual provision concerning timely payment of commissions due upon the termination of the contract with the sales representative, shall be liable in a civil action for exemplary damages in an amount which does not exceed 3 times the amount of the commissions owed to the sales representative. Additionally, such principal shall pay the sales representative's reasonable attorney's fees and court costs."

23. That Defendants have willfully and knowingly failed to timely pay Plaintiff his final compensation in violation of the Illinois Sales Representative Act.

24. That Defendants should be held liable for exemplary damages, reasonable attorney's fees and court costs.

WHEREFORE, Plaintiff, SCOTT BALTES, pursuant to 820 ILCS 120/1 prays that this Court enter a Judgment in its favor and against the Defendants DAN HOLLOWAY, RON SIRIANO, individually and d/b/a ARIENCE BUILDERS, INC, as follows:

 A. For an award in the amount of Plaintiff's unpaid compensation;

B. For exemplary damages in the amount of , as provided by statute;

C. For Plaintiff's costs of suit, as provided by statute;

D. For Plaintiff's reasonable attorneys fees, as provided by statute;

E. For such other or further relief as this Court deems just and equitable.

## COUNT III - BREACH OF CONTRACT

25. That Plaintiff realleges and incorporates Paragraphs 1-9 as if he had restated them in their entirety.

26. That from December 13, 2006 until September 18, 2007, the parties had an oral agreement that Defendants ARIENCE were to pay commissions to Plaintiff at a rate of eight percent (8%) of the sale price of all jobs that Plaintiff sold.

27. That on September 19, 2007, the parties entered into an Employment Agreement in DuPage County, Illinois (see Exhibit B).

28. That, upon information and belief, for all of Plaintiff's completed work from the date of December 13, 2006 until December 19, 2007, pursuant to the terms of said Employment Agreement, Defendants were to compensate Plaintiff a total amount in excess of $122,000.00 for commissions.

29. That Plaintiff has only received partial  payments totaling $42,262.70 from Defendant ARIENCE as compensation under said procurement of customers pursuant to the oral agreement.

30. That Plaintiff at all times has complied with all terms and conditions of the Employment Agreement (see Exhibit B to this Complaint) and has fulfilled his contractual obligations.

31. That Defendant ARIENCE, in violation of the Employment Agreement, has failed to make full payment and owes Plaintiff the remaining principal in an amount in excess of $80,000.00 plus interest.

32. That the actions of Defendant ARIENCE are a breach of contract and have caused Plaintiff damages in that he has not received his full compensation owed him.

WHEREFORE, Plaintiff, SCOTT BALTES, prays that this Court enter a Judgment in its favor and against the Defendant, DAN HOLLOWAY, RON SIRIANO individually and d/b/a ARIENCE BUILDERS, INC, as follows:

A. For an award in an amount in excess of $80,000.00 plus interest since December 19, 2007;

B. For Plaintiff's costs of suit;

C. For Plaintiff's reasonable attorneys fees

D. For such other or further relief as this Court deems just and equitable.

## COUNT IV - UNJUST ENRICHMENT

33. That, from December 13, 2006 until December 19, 2007, Plaintiff performed architectural and sales services for Defendants.

34. That the fair market value of Plaintiff's architectural and sales services are $80,000.00.

35. That Defendants have received a benefit in the form of $80,000.00 which they have in their possession and which is due and owing to Plaintiff as unpaid compensation for said architectural and sales services.

WHEREFORE, Plaintiff SCOTT BALTES respectfully prays that this Honorable Court enter a judgment in its favor and against Defendant ARIENCE BUILDERS, INC., as follows:

A. For an award in the amount that Defendant was unjustly enriched,

B. For an award of punitive damages in an amount appropriate to punish Defendant for its willful, wanton, and knowing conduct;

C. For Plaintiff's costs of suit;

D. For interest since the date of Defendant's unjust enrichment; and

E. For such other or further relief as this Court deems just and equitable.

## COUNT V - ACCOUNTING

36. That Plaintiff realleges and incorporates Paragraphs 1-9 as if he had restated them in their entirety.

37. That this action is hereby brought by Plaintiff against Defendants regarding both an oral agreement and a written Employment Agreement whereby Plaintiff was both an independent contractor for Defendants and an employee and in consideration thereof was to receive commissions as his compensation.

38. That, to date, Plaintiff has not received his past due commissions and salary from Defendants. That Plaintiff on information and belief assumes that the sum to be paid for all work is an amount in excess of $80,000.00 for back commissions from jobs sold by Plaintiff while he worked for Defendants.

39. That Plaintiff is to be paid on all jobs pursuant to his written and oral agreement on contracts produced by him and accepted by Defendants each and everyone who has in their possession copies of all contracts being serviced. That said contracts establish the exact amounts due and owing to Plaintiff.

39. That Defendant ARIENCE is now a viable business that was reinstated to good standing with the State of Illinois on January 28, 2008, and upon information and belief made a profit in 2007.

40. That Plaintiff as past employee of Defendant ARIENCE demands that Defendants, each and every one of them produce copies of all contracts procured by Plaintiff and would establish the payments owing to him.

WHEREFORE, Plaintiff SCOTT BALTES prays that an Accounting be ascertained to determine all of Defendants DAN HOLLOWAY, RON SIRIANO individually and d/b/a ARIENCE BUILDERS, INC.'s Job Sales Prices and Actual Job Costs from December 13, 2006 to the present; and copies of all contracts procured by Plaintiff to determine all commissions due Plaintiff.

Respectfully submitted,

By: _____
One of Plaintiff's Attorneys

Alan H. Shifrin & Associates, LLC
Attorneys for Plaintiff
3315 Algonquin Road, Suite 202
Rolling Meadows, IL  60008
(847) 222-0500
Atty No. 28918

STATE OF ILLINOIS     )
                         ) SS.
COUNTY OF DUPAGE   )

FEB 20 2008

## VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforementioned that he verily believes the same to be true.

By:_____
SCOTT BALTES

Alan H. Shifrin & Associates, LLC
Attorneys for Plaintiff
3315 Algonquin Road, Suite 202
Rolling Meadows, IL 60008
(847) 222-0500
Atty No. 28918

STATE OF ILLINOIS    )
                   )

COUNTY OF DUPAGE   )

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN THE COUNTY OF DUPAGE, ILLINOIS

| | |
|---|---|
| SCOTT BALTES, ) | |
|         Plaintiff, ) | |
| ) | |
| v. ) | No. _____ |
| ) | |
| DAN HOLLOWAY, RON SIRIANO ) | Amount Claimed: in excess of |
| both individually and d/b/a ) | $50,000.00 |
| ARIENCE BUILDERS, INC., ) | |
|         Defendants. ) | |

## AFFIDAVIT OF DAMAGES

MICHAEL DIBENEDETTO of ALAN H. SHIFRIN & ASSOCIATES, LLC does hereby state that:

This cause does seek damages in excess of Fifty-Thousand and 00/100 Dollars ($50,000.00).

STATE OF ILLINOIS    )
                  ) SS
COUNTY OF DUPAGE   )

Under penalty of perjury as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and such matters the undersigned certifies as aforementioned that he verily believes the same to be true.

By: _____
ALAN H. SHIFRIN & ASSOCIATES, LLC

Alan H. Shifrin & Associates, LLC
Attorneys for Plaintiff
3315 Algonquin Road, Suite 202
Rolling Meadows, IL 60008
Phone: (847) 222-0500
Fax: (847) 222-0375
Atty No. 28918



| SERVICES | PROGRAMS | PRESS | PUBLICATIONS | DEPARTMENTS | CONTACT |

## CORPORATION FILE DETAIL REPORT

| Entity Name | ARIENCE BUILDERS INCORPORATED | File Number | 64803735 |
|---|---|---|---|
| Status | REINSTATED/GOODSTANDING | | |
| Entity Type | CORPORATION | Type of Corp | DOMESTIC BCA |
| Incorporation Date (Domestic) | 04/17/2006 | State | ILLINOIS |
| Agent Name | DANIEL L HOLLOWAY | Agent Change Date | 01/28/2008 |
| Agent Street Address | 47266 MAIN STREET | President Name & Address | DANIEL HOLLOWAY 4726 MAIN STREET LISLE IL 60532 |
| Agent City | LISLE | Secretary Name & Address | RONALD SIRIANO SAME |
| Agent Zip | 60532 | Duration Date | PERPETUAL |
| Annual Report Filing Date | 01/28/2008 | For Year | 2007 |

**Return to the Search Screen**        Purchase Certificate of Good Standing

(One Certificate per Transaction)

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

EXHIBIT A

# DESIGNER'S EMPLOYMENT CONTRACT

THIS EMPLOYMENT AGREEMENT (the "Agreement") made and entered into on _9/19/07_ by and between _Scott Baltes_ (the "Employee), an individual residing at _404 S. Maple St._ and Arience Builders, Inc. (the "Company"), an Illinois corporation having offices at _4726 Main St., Lisle_.

WITNESSETH:

WHEREAS, the employee is willing to enter into this Agreement and employment with the Company upon the conditions and terms herein set forth;

NOW THEREFORE, for the valuable consideration set forth in this agreement and intending to be legally bound, the Employee and the Company mutually promise and agree as follows:

## 1. Position and Duties.

During the time this Agreement is in effect, the Company will employ the Employee and the Employee will accept such employment. The employee will devote substantially all of his time and attention to, and will use his best energies and abilities in the performance of his duties and responsibilities, and will not engage as director, officer, employee, partner, shareholder, or any other capacity, in any business which competes, conflicts or interferes with the performance of his duties hereunder in any way, or solicit, canvass or accept any business or transaction for any such competing business.

Employee shall wear the uniform provided by the company on sales appointments or calls, unless different attire is deemed appropriate for the job and/ or task and weather conditions.

Employee shall meet at the Company Office or other agreed to location to complete necessary work and meet with owners and superintendents as required.

Employee shall update the Company calendar on a daily basis with sales appointments, leads, and other important meeting and/ or task information vital to the sale and/ or maintenance of current or prospective projects. The Company shall be responsible for scheduling appointments or leads unless the Company directs Employee to make contact and set appointment. In either case, the Company shall notify the Employee with the information required to be present at the appointment on the correct day and time. As a general company policy, Employee and Company agree that the rescheduling of an initial appointment is to be avoided at all costs.

Employee will be entitled to vacation time granted that: 1. Employee gives a 2 week notice to the Company prior to departure, and 2. Employee coordinates any current jobs and or activities vital to the progress of those jobs prior to departure.



**2. Compensation, Incentives and Expenses.**

For all services to be rendered by the Employee pursuant to Paragraph 1 of the Agreement, and in part of the consideration for the other obligations and promises of the Employee as set forth in this Agreement, the Company will compensate the Employee during the time he is employed by the Company as follows:

A)  A commission based salary on each of the Employee's projects according to the following terms and conditions:

   1.  Company and Employee determine the minimum percentage to be used on each individual job as follows:

| JOB COST | MINIMUM PERCENTAGE | MINIMUM SALE PRICE |
|---|---|---|
| $ 0 - $ 30,000 | 1.25 | Job Cost x 1.25 |
| $ 30,001 - $ 45,000 | 1.30 | Job Cost x 1.30 |
| $ 45,001 - $ 60,000 | 1.35 | Job Cost x 1.35 |
| $ 60,001 – and up | 1.38 | Job Cost x 1.38 |

The Minimum Percentage as shown above determines the Minimum Sale Price the job must be sold for unless agreed to otherwise between Company and Employee based on unique and/or competitive situations.

The difference in the dollar amount between the Job Cost and the Minimum Sale Price is awarded to the Company.

The remaining amount (the dollar difference between the Minimum Sale Price and the Actual Sale Price) is awarded to the employee in full up to a Maximum Percentage Sale of 1.58.

Any dollar amount of profit greater than the calculated Maximum Percentage Sale Price shall be shared evenly between the Company and the Employee (50% to Company, 50% to Employee).

If, when the job actually closes, the job cost is less than that initially calculated, and thus the Minimum Sale Price is affected (which in turn affects the payout schedule above), the amounts will be re-calculated and any additional commissions owed to the Employee (as calculated in the "AT CLOSE" section of the "COMMISSION CALCULATION FORM") will be awarded.

If, when the job actually closes, the job cost is for some reason greater than that initially calculated (see item #3 below) and thus the Minimum Sale Price is affected (which in turn affects the payout schedule above), the Company and Employee will discuss and assess the situation so that it is fair to both the Employee and the Company.

   2.  Employee shall hand in the job price sheet to the Company with the sold job paperwork.
   3.  Company and Employee will agree to the job cost evaluation and mutually fill out and approve/ sign a "COMMISSION CALCULATION FORM". This form will include the following information (see page 3):

# COMMISION CALCULATION FORM

## AT SALE

Actual Sale Price = _____

1. _____  x  _____  =  _____
      Job Cost        Min. Percentage      Min. Sale Price

2. _____  x  _____  =  _____
      Job Cost      Max. Percentage (1.58)    Max. Percentage
                                            Sale Price

If the Actual Sale Price is less than the Maximum Percentage Sale Price, then:

3. _____  -  _____  =  _____
   Actual Sale Price    Min. Sale Price    Employee Commission

IF the Actual Sale Price is greater than Maximum Percentage Sale Price, then also add the following:

4. _____  -  _____  =  _____ x .50 = _____
   Actual Sale Price   Max. Percentage    Additional Profit     Additional
                          Sale Price                                  Employee
                                                                            Commission

## AT CLOSE

Final commission payout (if job closes better than that initially calculated above):

If the Actual Sale Price is still less than the Maximum Percentage Sale Price, then:

5. _____  -  _____  -  Commission  =  _____
   Actual Sale Price    Actual Min.     Already Paid   Additional Employee
                        Sale Price                                   Commission

IF the Actual Sale Price is greater than the Actual Max. Percentage Sale Price, then also add the following:

6. _____  -  _____  =  _____ x .50 = _____
   Actual Sale Price   Actual Max. Percentage   Additional Profit    Additional Employee
                        Sale Price                                        Commission

3

4. Commissions will be paid to Employee as follows:
   a. 25 % of commission at contract signing
   b. 25 % of commission at submittal of project selections (i.e. plumbing fixtures, tile, appliances, etc) and plan approval by the customer to the company.
   c. 50 % at completion of project.
   d. Payment of remaining commission (if any) shall be determined at the close of the job according to item 2A1 of this Agreement and as filled out in the "AT CLOSE" section of the COMMISSION CALCULATION FORM.

5. Change Orders (C.O.) will be considered separate entities and will not affect the job commission as calculated and agreed to on the COMMISSION CALCULATION FORM. Employee shall hand in a separate cost sheet with each change order sold. All change orders will be sold according to the following criteria:

| CHANGE ORDER COST | MINIMUM PERCENTAGE | MINIMUM SALE PRICE |
| --- | --- | --- |
| Under $ 3,000 | - | Company handles |
| $ 3000 - $ 5,000 | 1.25 | C.O. Cost x 1.25 |
| $ 5,001 - $ 10,000 | 1.30 | C.O. Cost x 1.30 |
| $ 10,001 - $ 25,000 | 1.35 | C.O. Cost x 1.35 |
| $ 25,001 – and up | 1.38 | C.O. Cost x 1.38 |

The Minimum Percentage as shown above determines the Minimum Sale Price the change order must be sold for unless agreed otherwise between Company and Employee based on unique and/ or competitive situations.

The difference in the dollar amount between the Change Order Cost and the Minimum Sale Price is awarded to the Company.

The remaining dollar amount (the difference between the Minimum Sale Price and the Actual Sale Price) is awarded to the employee in full up to a Maximum Sale Percentage of 1.58.

Any dollar amount of profit greater than the calculated Maximum Percentage Sale Price shall be shared evenly between the Company and the Employee (50% to Company, 50% to Employee).

4

B) The company will pay an advertisement incentive bonus of three hundred seventy five dollars ($275) per month to the Employee if he agrees to affix the Company logo in a conspicuous manner to his registered personal motor vehicle. The company agrees to tint the window areas that the advertisement is to be installed. This bonus is allowed for one vehicle per Employee. The Employee is still responsible for maintaining all loan payments, proper licenses, permits, registration, and insurance for the vehicle. The Company is not Liable for any insurance, maintenance, loan payments, damage or other acts of harm to the Employee or any other party as a result of the vehicle being driven.

C) Expenses that will be covered by the Company shall be approved and will include (but are not necessarily limited to):

General office supplies, copies, collating, binding
Design literature (design books, magazines, etc.)
Presentation materials (mounting boards, adhesives/ supplies)
Customer/ potential customer entertainment
Gifts for current or potential customers (flowers, fruit baskets, etc.)
Parking costs if required (i.e. Chicago/ downtown jobs)

D) Design retainers to be paid to the Employee as follows:

| PAYMENT | RESPONSIBILITIES |
|---|---|
| 1.  1/3 of design fee | Employee coordinates design, Company draws, Employee presents |
| 2.  2/3 of design fee | Employee designs Employee draws Employee presents |
| 3.  1/2 of design fee | Employee coordinates design Company draws existing conditions only Employ draws the rest Employee presents |

**3. Form of payment.**
The employee is responsible for completing a Compensation Request for all compensation, incentives or expenses. All Compensation Requests must be submitted by 11:00 am on the Friday proceeding the scheduled pay period.

All payments shall be paid to the Employee in accordance with all applicable income tax withholding deductions required by law and other deductions (if any) as authorized by the Employee.

5

### 4. Term

This agreement for employment by and between the parties shall be an agreement for employment at will commencing on the date hereof, subject to immediate termination by the Company without notice or cause. If Employee wishes to terminate this agreement they must provide One (1) month notice of this intent to the Company.

Nothing contained in this Agreement shall be construed to prevent the Company from terminating the employment of the Employee hereunder at any time for cause. As used in this Agreement, "termination for cause" shall mean a termination based upon the dishonesty, gross negligence, incompetence or moral turpitude of the Employee or any failure to perform his duties hereunder or otherwise comply with and observe the covenants and agreements made by him herein.

### 5. Non-Competition

Unless express written exception to this paragraph is provided by executive officers of the Company, during the time of the Employee's employment by the Company, and for a period of One (1) year after termination, the Employee shall not, directly or indirectly, acting alone or in conjunction with others:

A) Request any customers of any business then being conducted by the Company to curtail or cancel their business with the Company;

B) Solicit, canvass or accept any business or transaction for any other person, firm or corporation or business similar to the business of the Company, from any past or existing customers of the Company;

C) Induce, or attempt to influence, any employee of the Company to terminate employment with the Company or to enter into any employment or other business relationship with any other person (including the Employee), firm or corporation; or

D) Act or conduct him or herself in any manner which is contrary to the best interests of the Company.

The Employee recognizes that immediate and irreparable damage will result to the Company if the Employee breaches any of the terms and conditions of this Paragraph 4 and, accordingly, the Employee hereby consents to the entry by any court of competent jurisdiction of an injunction against him to restrain any such breach, in addition to any other remedies or claims for money or damages which the Company may seek. The Employee represents and warrants to the Company his experience and capabilities are such that he can obtain employment in business without breaching the terms and conditions of this Paragraph 5 (and the enforcement thereof by injection or otherwise) will not prevent him from earning a livelihood. The Employee agrees to pay any and all reasonable attorney fees sustained by the Company in connection with any breach of this Agreement.

### 6. Trade Secrets/ Confidential Information/ Intellectual Property

The Employee agrees that he will not at any time or in any manner divulge, disclose or communicate to any person, firm or corporation any trade, technical or technical or technological secrets; any details of the Company's organization or business affairs, its manner of operation, its plans, processes, and/ or other data; any names of past or present customers of the Company; or any other information relating to the business of the Company, without regard to whether all of the foregoing matters will be deemed confidential, material, or important. The Employee further

6

agrees that all leads, files, forms, documents and logos created or used in the performance of his or her duties during the course of his or her employment are the property of the Company, and the downloading, copying or distribution of any of these or similar items without the express approval of the Company can result in immediate termination of employment and possible prosecution.

With respect to the foregoing, the Employee hereby stipulates and agrees that the same are confidential, material, and important, and any breach of this paragraph 6 will adversely affect the business of the Company, its effective and successful management, and its inherent good will.

### 7. Assignment

The benefits of this Agreement are and shall be personal to the Employee, and none thereof shall inure to the benefit of his heirs, personal representatives, or assigns. The obligations and duties of the Employee hereunder shall be personal and not assignable or delegable by him in any manner, whatsoever. This Agreement shall be binding upon and inure to the benefit of the Company and it shall be assignable by the Company to any entity which may acquire substantially all of the business and assets of the Company, or with or into which the Company may be merged or consolidated.

### 8. Entire Agreement, Amendment

This agreement constitutes the entire agreement between the parties with respect to the employment of the Employee by the Company and shall be deemed effective on the date of signing. Per discussion between the Employee and the Company, the previous written agreement between the Employee and the Company will be held effective for any and all jobs and change orders sold prior to the date of signing of this written Agreement. For all jobs sold prior to this Agreement but not yet completed (currently in progress or waiting to start construction), any and all change orders not yet sold shall abide by the new regulations set forth in this Agreement according to paragraph 2A5. This Agreement may be amended, modified or waived only by an instrument in writing signed by the Employee and an authorized executive officer of the Company.

### 9. General

The headings of the Articles and paragraphs of this Agreement are for the convenience of reference and not to be used to interpret or construe any provisions of this Agreement. This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written.

9/19/07

9/19/07

9/19/07

LAW OFFICES

## *Alan H. Shifrin & Associates, L.L.C.*

3315 ALGONQUIN ROAD, SUITE #202
ROLLING MEADOWS, ILLINOIS 60008

PHONE (847) 222-0500
FAX (847) 222-0375
info@ashiflaw.com

ALAN H. SHIFRIN
TERRY D. SLAW
JEFFREY S. MARKS
MICHAEL R. DIBENEDETTO
KIMBERLY LW SANDERS
*PARALEGAL*

CHICAGO OFFICE
BY APPOINTMENT ONLY

On December 26, 2007

*VIA U.S. MAIL AND FACSIMILE: (630) 963-4203*

Dan Holloway
President
Arience Builders, Inc.
4726 Main Street
Lisle, IL  60532-1724

     Re: <u>Scott Baltes</u>
     Our File No: 9499

Dear Mr. Holloway:

This office has been retained to represent the interest of Scott Baltes, a former employee of Arience Builders.  Your company still owes commissions to our client from a number of projects on which he was the procuring cause.  Please note that under the Illinois Wage Payment and Collection Act, employers are obligated to pay the final compensation of separated employees in full at the time of separation, if possible.

All of the requisite materials to determine his compensation are currently in your possession.  Therefore, **please provide us an itemized list of outstanding commissions due Mr. Baltes**.  For each item, be sure to include all of the necessary components for calculating his commissions (e.g., projects, change orders, sale prices, cost sheets, commission calculation forms, and all relevant dates).  Please also include dates on which he can expect said payments and the amounts of those payments.  Mr. Baltes requests to be paid via check and for all checks to be mailed to his residence.

Also, if any of Mr. Baltes' drawings or other materials are used by your company to procure any future sales, then he has a right to commissions for those sales as well.  Accordingly, we request that you either return all of our client's work product for past and future projects or pay him all future commissions resulting from sales attributable to his work.



Last, please note that under your employment contract with our client, Mr. Baltes is free to contact any and all prospective customers of Arience Builders. He is also free to contact and work with any contractor or subcontractor with whom he has developed relationships while working at your company.

If you have any questions or would like to discuss this matter, then please feel free to contact our office.

Very truly yours,

Alan H. Shifrin (MD)
Attorney at Law

LAW OFFICES

# *Alan H. Shifrin & Associates, L.L.C.*

3315 ALGONQUIN ROAD, SUITE #202
ROLLING MEADOWS, ILLINOIS 60008

PHONE (847) 222-0500
FAX (847) 222-0375
info@ashiflaw.com

ALAN H. SHIFRIN
TERRY D. SLAW
JEFFREY S. MARKS
MICHAEL R. DIBENEDETTO
KIMBERLY LW SANDERS
*PARALEGAL*

CHICAGO OFFICE
BY APPOINTMENT ONLY

January 2, 2008

*VIA U.S. MAIL AND FACSIMILE: (630) 963-4203*

Dan Holloway
President
Arience Builders, Inc.
4726 Main Street
Lisle, IL  60532-1724

Re: Scott Baltes
Our File No: 9275

Dear Mr. Holloway:

As you know, this office has been retained to represent the interest of Scott Baltes, a former employee of Arience Builders. Per your request (via written correspondence dated December 18, 2007), Mr. Baltes has returned the following items to your company by dropping them off at the UPS Store located at 1042 Maple Avenue in Lisle:

-one HP Photosmart printer (in box with all accessories)
-one Canon Powershot SD400 digital camera (in box with all accessories)
-19 Arience shirts
-one Adobe Acrobat bundle CD
-various forms and specification sheets
-business cards
-one surge protector
-one computer power cord
-one laptop lock cable with key

As we previously stated, your company still owes commissions to our client from a number of projects on which he was the procuring cause. The requisite materials to determine his compensation are currently in your possession. Therefore, per Illinois Compiled Statutes chapter 820, sections 155/5 and 115/14, and Department of Labor Administrative Rules section 300.510 regarding

commissions, we request an itemized list of outstanding commissions due Mr. Baltes **within ten days of your receipt of this letter**. You are obligated to fully comply with this itemization request. For each item, be sure to include all of the necessary components for calculating his commissions (e.g., projects, change orders, sale prices, cost sheets, commission calculation forms, and all relevant dates). Please also include dates on which Mr. Baltes can expect said payments and the amounts of those payments.

It is our philosophy that before we institute further action in any matter, we tender the opportunity for resolution. This letter is to afford you the courtesy opportunity to resolve the matter easily, before the collection process goes further.

Pursuant to the Fair Debt Collection Practices Act, 15 USCS 1692, et seq, you have certain rights concerning the claimed debt. You have the right to dispute the validity of the debt in writing within 30 days. Your failure to so dispute the validity of the debt will result in the debt being assumed valid. You have the right to request within 30 days, in writing, verification of the debt, or any portion of the debt which you dispute. If you so request a copy of verification it will be sent to you. You have the right to request, within 30 days, in writing, the name and address of the original creditor, if different from the named creditor.

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

If you have any questions or would like to discuss this matter, then do not hesitate to contact our office.

Very truly yours,

Alan H. Shifrin (MD)
Attorney at Law

cc: Scott Baltes