**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARIENCE BUILDERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.08 C 921 |
| | ) | |
| SCOTT BALTES, | ) | Judge Bucklo |
| | ) | Magistrate Judge Cole |
| Defendant. | ) | |

**ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES AND COMPULSORY**
**COUNTERCLAIM UNDER FEDERAL RULES OF CIVIL PROCEDURE 13(a)**

Defendant, Scott Baltes, by and through his undersigned attorneys, hereby Answers

Plaintiff's Complaint, and provides the following Affirmative Defenses.

1.    Plaintiff is a corporate resident of the Northern District of Illinois with its principal place of business in Lisle, Illinois. At all times relevant Plaintiff was Defendant's employer pursuant to a "Designer's Employment Contract" between the parties dated September 19, 2007 (the Contract). A copy of pertinent portions of said Contract is attached hereto as Exhibit "A".

**ANSWER:**
Defendant admits that as of the date of the filing of this complaint, that Plaintiff is a

corporate resident of the Northern District of Illinois with its principal place of business in Lisle,

Illinois. Defendant however denies that as of time of the matters complained about herein that

Plaintiff was a corporate resident of the Northern District of Illinois with its principal place of

business in Lisle, Illinois, and affirmatively state that at that time the corporation had been

involuntarily dissolved. Defendant admits to the rest of the paragraph.

2.    Defendant is an individual resident of the Northern District of Illinois who at all times relevant was an employee of Defendant from or about September 19, 2007 until he was terminated for cause on or about December 18, 2007.

**ANSWER:**
Defendant denies that he was terminated for cause and admits to the rest of the paragraph.

3.    Jurisdiction of the claims herein is pursuant to the federal Computer Fraud and Abuse

Act, 18 U.S.C. 1830, et seq. For relief and damages based on Defendant's unlawful conduct in violation thereof. The Court also has supplemental jurisdiction of Plaintiff's related claims against Defendant for breach of contract, conversion/ misappropriation of trade secrets, and breaching his duty of loyalty to Plaintiff, under 28 U.S.C. 1367.

**ANSWER:**
Admit as to jurisdiction, deny as to any inference of wrongdoing by Defendant.

4.     Venue is proper in this judicial district under 28 USC 1391(b) as Defendant's alleged unlawful and wrongful misconduct were committed within this District and both parties reside in this District.

**ANSWER:**
Admit as to venue, deny as to any inference of wrongdoing by Plaintiff.

5.     As an employee of Plaintiff, Defendant was given access to a laptop computer used to analyze, retrieve, utilize and/or record proprietary and confidential customer, financial and other business-related information and filed belonging to Plaintiff. Such included , but was not limited to: hundreds of pricing methods, appliance specifications, drawings, title blocks, elevations, works in progress, client scopes, plans, and other data belonging to Plaintiff and which Defendant utilized and collected in the course of his employment to identify potential customers, prepare construction bids and otherwise service accounts.

**ANSWER:**
Admit Defendant was given use of a laptop computer during his tenure with the Plaintiff

to use in the course of his employment, but deny and demand strict proof as to what was

contained on the laptop.

6.     In addition, Defendant expressly acknowledged and agreed in his employment Contract, at paragraph 6, inter alia, that such Proprietary Business Information and data is confidential, that he will keep same confidential, and that such is and shall always remain Plaintiff's property. Plaintiff also agreed, at paragraph 5 of his Contract, to pay Plaintiff's reasonable attorney's fees in connection with any breach thereof.

**ANSWER:**
Deny and state that the best evidence in this matter is the employment Contract, of which

only a portion is attached, and which, as a whole, speaks for itself.

7.     During his employment with Plaintiff, inter alia, Defendant intentionally, wrongfully, and without Plaintiff's knowledge, approval, or consent:
        a.     Underbid, under-priced, and/or undersold (without required company approval) Plaintiff's construction projects, including but not limited to the Boyd Project (approx. $25,537.72 loss); the Turone Project (approx.

$6,965.44 loss); the Breen Project (approx. $22,211.78 loss); the Dietz Project (approx. $58,286 loss) and the Hornbeck Project (approx. $10,740 loss);

b.   Used Plaintiff's computer(s) to perform unauthorized work for his own personal financial benefit and/or that of Plaintiff's competitors;

c.   Failed to update Plaintiff's project calendar and/or rescheduled customer appointments; and

d.   Otherwise acted improperly, for his own personal financial gain, at Plaintiff's expense and to its detriment, in violation of his legal and contractual duties to Plaintiff.

**ANSWER:**
Deny as to all allegations contained herein.

8.   Upon information and belief, at or just prior to the termination of his employment with Plaintiff, Defendant decided to go into the business and/or compete with Plaintiff and Defendant first secretly and maliciously copied and converted Plaintiff's Proprietary Business Information on said laptop computer for his own use, and then deleted , caused to be deleted, and intended to delete, Plaintiff's Proprietary Business Information for said laptop computer.

**ANSWER:**
Deny as to all allegations contained herein.

9.   At or just prior to his termination of employment with Plaintiff, Defendant also copied and/or deleted or caused to be deleted other confidential and proprietary business data, information and trade secrets on said laptop computer and belonging to Plaintiff (as well as data that would have revealed the improper conduct in which Defendant had engaged before he departed from Plaintiff) and critical to its current and future business operations.

**ANSWER:**
Deny as to all allegations contained herein.

10.   Upon information and belief, since his termination of employment, Plaintiff has also wrongfully, intentionally and/or in violation of his Contract: (a) contacted (or causing to be contacted) and requesting that one or more of Plaintiff's customers curtail or cancel their business with Plaintiff; (b) solicited and/or accepted business from a past or existing customer of Plaintiff; and (c) otherwise acted in manner inconsistent with Plaintiff's best interests

**ANSWER:**
Deny as to all allegations contained herein.

## COUNT 1
## VIOLATION OF COMPUTER FRAUD AND ABUSE ACT
### ((18 USC 1030, et seq)

1.     Plaintiff realleges paragraphs 1 through 9 above as Paragraph 1 of Count 1.

   **ANSWER**
   Defendant reiterates his previous answers to the above referenced paragraphs.

2.     The Federal Computer Fraud and Abuse Act (the "Act") provides, inter alia, that whoever "knowingly causes damage without authorization, to a protected computer [a defined term that includes the laptop that Defendant used]," violates the Act. The Act further prohibits intentionally accessing a protected computer without authorization and which access recklessly causes damage [citation omitted].

   **ANSWER:**
   Deny that the laptop that Defendant was using is a "protected computer" as defined by the statute. Affirmatively state that the statute speaks for itself.

3.     Defendant's misconduct, as alleged above, constituted a code and/or command by him which was unauthorized and caused deletion of data and/or damage to Plaintiff's protected laptop computer and/or the described computer data stored therein, in violation of one or more provisions of the Act.

   **ANSWER:**
   Deny as to all allegations contained herein.

4.     As a direct and proximate result thereof, Plaintiff has suffered damages in an amount well over $5,000 and to be determined at trial.

   **ANSWER:**
   Deny as to all allegations contained herein.

## COUNT II
## MISAPPROPRIATION/CONVERSION OF TRADE SECRETS
## (765 ILCS 1065/1, et seq)

1.     Plaintiff realleges paragraphs 1 of Count 1 as Paragraph 1 of Count 1.

   **ANSWER**
   Defendant reiterates his previous answers to the above referenced paragraphs.

2.     Plaintiff's Proprietary Business Information, as alleged above, are trade secrets subject to protection under the Illinois Trade Secrets Act. [citation omitted].

   **ANSWER:**

Deny as to all allegations contained herein.

3.     Plaintiff's Proprietary Business Information also contains, inter alia, "technical" information, "data" "method(s)" technique(s)" and other confidential information that is sufficiently secret to give Plaintiff a competitive business advantage. [citation omitted]

**ANSWER:**
Deny as to all allegations contained herein.

4.     Plaintiff also took reasonable measures under the circumstances to maintain the secrecy of this Proprietary Business Information, including not disclosing same to anyone other than an employee, such as Defendant, who agreed to keep same confidential and for use only in connection with Plaintiff's business dealings.

**ANSWER:**
Deny, and leave Plaintiff to their proofs on this matter

5.     Plaintiff has violated the Illinois Trade Secret Act by, inter alia, copying, deleting, and/or converting Plaintiff's Proprietary Business Information for his own use, and also by intentionally depriving Plaintiff access to same.

**ANSWER:**
Deny as to all allegations contained herein.

6.     As a direct and proximate result of the forgoing, Plaintiff has suffered and will continue to suffer significant and/or irreparable damage, harm and loss.

**ANSWER:**
Deny as to all allegations contained herein.

## COUNT III
## BREACH OF CONTRACT

1.     Plaintiff realleges paragraphs 1 of Count 1, and 10 above, as Paragraph 1 of Count 3.

**ANSWER**
Defendant reiterates his previous answers to the above referenced paragraphs.

2.     Defendant's misconduct, as alleged above, was in breach of his contractual duties and obligations to Plaintiff.

**ANSWER:**
Deny as to all allegations contained herein.

3.     As a direct and proximate result thereof, Plaintiff has suffered damages in an amount not

less than $100,000 but to be determined at trial.

**ANSWER:**
Deny as to all allegations contained herein.

## COUNT IV
## BREACH OF DUTY OF LOYALTY

1.    Plaintiff realleges paragraph 1 of Count 3 as Paragraph 1 of Count 4.

**ANSWER**
Defendant reiterates his previous answers to the above referenced paragraphs.

2.    As a matter of Illinois law, and by virtue of his express employment contract with Plaintiff, defendant owed Plaintiff a duty of loyalty and was required to refrain from acting in a manner inconsistent with Plaintiff's business interests or to cause harm to Plaintiff or its business operations.

**ANSWER:**
Deny, and affirmatively state that the best evidence of duties owed between the parties is the Contract between them.

3.    All of Defendant's misconduct, as alleged, breached said duty of loyalty owed to Plaintiff.

**ANSWER:**
Deny as to all allegations contained herein.

4.    As a direct and proximate result of the forgoing breaches, Plaintiff has suffered and will continue to suffer financial loss in a sum of not less than $100,000 but in an amount to be determined at trial.

**ANSWER:**
Deny as to all allegations contained herein.

## AFFIRMATIVE DEFENSES

1.    That Plaintiff, Arience Builders, Inc. has no standing to bring this lawsuit, and is not a proper party, as it was dissolved during the entirety of the time period of the events complained of.

2.    That Plaintiff, Arience Builders, Inc. has no standing to bring this lawsuit, and is not a proper party, as it had held itself out to the world as a partnership, and not a corporation, during

the time period in which it was dissolved.

3.      That during the time period in question, the owners of Plaintiff were upon information and belief, employees of or under contract with, Normandy Construction Inc., and "Plaintiff's Proprietary Business Information" actually belonged to Normandy Construction Inc, and not to Plaintiff.

4.      That the term "Plaintiff's Proprietary Business Information" is conclusiory and it is a mater for the Court to decide which, if any of the information provided to Plaintiff, is proprietary.

5.      That as part of Defendant's duties, he was required to create multiple iterations of very large Auto-CAD graphics files which took up significant space on the computers hard drive. It was routine for Defendant, at the direction of Plaintiff, to clear out older iterations (earlier versions) of such files when he no longer had space on his hard drive.

## COUNTERCLAIM UNDER FEDERAL RULES OF CIVIL PROCEDURE 13(a)

1.      That Case No. 2008 L 000227 was filed in DuPage County Circuit Court (18th Judicial District) by Defendant against Dan Holloway, Ron Siriano both individually and d/b/a Arience Builders, Inc.. This action was filed on February 28, 2008 before Defendant Scott Baltes was served with the Federal Complaint No. 08 C 921 which was filed on February 13, 2008. The DuPage matter was Dismissed on July, 17 2008. All three parties were properly served in the DuPage case. As the operative facts alleged in the original DuPage County case rises out of the same transaction or occurrence, specifically dealing with Scott Baltes's employment and subsequent termination with Plaintiff, it is properly before this Court under Federal Rule of Civil Procedure 13(a).

2.      Further,  supplemental jurisdiction against Arience Builders, Inc. is proper, based upon the same jurisdictional requirements of the Plaintiff's Federal Complaint against Defendant Baltes, and the Federal Rules of Civil Procedure 13(a).

3.      Dan Holloway and Ron Siriano, owners and officers of Plaintiff Arience Builders, Inc.are properly named in this Counterclaim as additional defendants as during the time period in question, Arience Builders, Inc.was dissolved and held itself out in public as a partnership, not as a corporation. Dan Holloway and Ron Siriano are sufficiently closely related to Plaintiff Arience Builders, Inc. such that if not added as parties to this compulsory counterclaim, Defendant would be barred from seeking damages against them in any subsequent lawsuit and as such, supplemental jurisdiction is proper (See *Transamerica Occidental Life Insurance Co v. Aviation Office of America, Inc.*, 292 F.3d 384 (3rd Cir.2002) and *Avemco Insurance Co. V. Cessna Aircraft Co.*, 11 F.3d 998, 1001 (10th Cir. 1993))

## FACTS

4.      That from December 13, 2006 until September 18, 2007, ARIENCE (hereafter "Counter-Defendant") paid BALTES (hereafter "Counter-Plaintiff") under an oral agreement to perform architectural and sales services as an independent contractor at a commission rate of eight percent (8%) of all jobs that Counter-Plaintiff sold.

5.      That, on or about September 19, 2007, Counter-Plaintiff and Counter-Defendant entered into a written Employment Contract to perform architectural and sales services as an employee to

be paid on a commission basis according to a percentage-based formula for each project or change order sold as detailed in the contract (attached hereto in whole and marked as "Exhibit A").

6.      That Counter-Defendant terminated Counter-Plaintiff's employment on December 19, 2007.

7.      That Counter-Plaintiff, through his attorneys, has requested payment of final compensation, left unpaid at the time of termination (attached hereto and marked as "Exhibit B").

## COUNT I - VIOLATION OF ILLINOIS WAGE PAYMENT AND COLLECTION ACT, 820 ILCS 115/5, FOR SALARY AND COMMISSIONS DUE

8.      That Counter-Plaintiff realleges and incorporates Paragraphs 4-7 as if he had restated them in their entirety.

9.      That 820 ILCS 115/5, in relevant part states:

> "Every employer shall pay the final compensation of separated employees in full at the time of separation, if possible, but in no case later than the next regularly scheduled payday for each employee."
>
> "Where such employee requests in writing that his final compensation be paid by check and mailed to him, the employer shall comply this request."

10.     That 820 ILCS 115/13 states in relevant part that:

> "Any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation."

11.     That Counter-Defendants HOLLOWAY and SIRIANO were either or both the owners of or officers of Counter-Defendant ARIENCE, and they knowingly violated provisions of the Illinois Wage Payment and Collection Act by refusing to tender Counter-Plaintiff his due compensation after timely request.

WHEREFORE, Counter-Plaintiff, SCOTT BALTES, pursuant to 820 ILCS 115/5, prays that this Court enter a Judgment in its favor and against the Counter-Defendants, ARIENCE BUILDERS, INC, HOLLOWAY, and SIRIANO as follows:

A. For an Accounting to determine the amount of commissions due and owing.

B. For an award in the amount of Counter-Plaintiff's unpaid compensation;

C. For Counter-Plaintiff's costs of suit, as provided by statute;

D. For Counter-Plaintiff's reasonable attorneys fees, as provided by statute;

E. For such other or further relief as this Court deems just and equitable.

## COUNT II - BREACH OF CONTRACT
### Illinois Common Law

12.     That Counter-Plaintiff realleges and incorporates Paragraphs 4-7 as if he had restated them in their entirety.

13.     That Counter-Plaintiff has at all times complied with all terms and conditions of both the oral and written Employment Contracts and has fulfilled his contractual obligations.

14.     That Counter-Defendants, in violation of such Contracts, has failed to make full payment and owes Counter-Plaintiff, upon information and belief, in excess of $75,000.00.

WHEREFORE, Counter-Plaintiff, SCOTT BALTES, prays that this Court enter a Judgment in its favor and against the Counter-Defendants, ARIENCE BUILDERS, INC, HOLLOWAY, and SIRIANO as follows:

A. For an Accounting to determine the amount of commissions due and owing.

B. For an award in the amount of Counter-Plaintiff's unpaid commissions ;

C. For such other or further relief as this Court deems just and equitable.

## COUNT III - VIOLATION OF ILLINOIS SALES REPRESENTATIVE ACT, 820 ILCS 120/1, FOR COMMISSIONS DUE

15.     That Counter-Plaintiff realleges and incorporates Paragraphs 4-14 as if he had restated them in their entirety.

16.     That 820 ILCS 120/2 states in relevant part that:

> *"All commissions due at the time of termination of a contract between a sales representative and principal shall be paid within 13 days of termination, and commissions that become due after termination shall be paid within 13 days of the date on which such commissions become due."*

17.    That 820 ILCS 120/3 states in relevant part that:

> "*A principal who fails to comply with the provisions of Section 2 concerning timely payment or with any contractual provision concerning timely payment of commissions due upon the termination of the contract with the sales representative, shall be liable in a civil action for exemplary damages in an amount which does not exceed 3 times the amount of the commissions owed to the sales representative. Additionally, such principal shall pay the sales representative's reasonable attorney's fees and court costs.*"

18.    That Counter-Defendants' actions are in violation of the above statute.

WHEREFORE, Counter-Plaintiff, SCOTT BALTES, pursuant to 820 ILCS 120/1 prays that this Court enter a Judgment in its favor and against the Counter-Defendants, ARIENCE BUILDERS, INC, HOLLOWAY, and SIRIANO as follows:

A.  For an Accounting to determine the amount of commissions due and owing.

B.  For an award in the amount of Counter-Plaintiff's unpaid commissions ;

C.  For exemplary damages in the amount provided by statute;

D.  For Counter-Plaintiff's costs of suit, as provided by statute;

E.  For Counter-Plaintiff's reasonable attorneys fees, as provided by statute;

F.  For such other or further relief as this Court deems just and equitable.

## COUNT IV - UNJUST ENRICHMENT

19.    That Counter-Plaintiff realleges and incorporates Paragraphs 1-18 as if he had restated them in their entirety.

20.    That Counter-Defendants have received a benefit in the form of monies that should have been paid to Counter-Plaintiff.

WHEREFORE, Counter-Plaintiff, SCOTT BALTES, prays that this Court enter a Judgment in its favor and against the Counter-Defendants, ARIENCE BUILDERS, INC, HOLLOWAY, and SIRIANO as follows:

A.  For an Accounting to determine the amount in which Counter-Defendants were unjustly enriched.

B.  For an award in the amount that Counter-Defendants were unjustly enriched,

C.  For an award of punitive damages, if available, in an amount appropriate to punish Counter-Defendants for their willful, wanton, and knowing conduct;

D.  For interest since the date of Counter-Defendants' unjust enrichment; and

E.  For such other or further relief as this Court deems just and equitable.

Dated: August 11, 2008

Respectfully submitted,

By: /s/ Jeffrey S. Marks

Jeffrey S. Marks
Attorney #6290132
Alan H. Shifrin & Associates, LLC
Attorneys for Plaintiff
3315 Algonquin Road, Suite 202
Rolling Meadows, IL  60008
(847) 222-0500

# EXHIBIT A

# DESIGNER'S EMPLOYMENT CONTRACT

THIS EMPLOYMENT AGREEMENT (the "Agreement") made and entered into on _9/19/07_ by and between _Scott Baltes_ (the "Employee), an individual residing at _404 S. Maple St_ and Arience Builders, Inc. (the "Company"), an Illinois corporation having offices at _4726 Main St., Lisle_.

WITNESSETH:

WHEREAS, the employee is willing to enter into this Agreement and employment with the Company upon the conditions and terms herein set forth;

NOW THEREFORE, for the valuable consideration set forth in this agreement and intending to be legally bound, the Employee and the Company mutually promise and agree as follows:

## 1. Position and Duties.

During the time this Agreement is in effect, the Company will employ the Employee and the Employee will accept such employment. The employee will devote substantially all of his time and attention to, and will use his best energies and abilities in the performance of his duties and responsibilities, and will not engage as director, officer, employee, partner, shareholder, or any other capacity, in any business which competes, conflicts or interferes with the performance of his duties hereunder in any way, or solicit, canvass or accept any business or transaction for any such competing business.

Employee shall wear the uniform provided by the company on sales appointments or calls, unless different attire is deemed appropriate for the job and/ or task and weather conditions.

Employee shall meet at the Company Office or other agreed to location to complete necessary work and meet with owners and superintendents as required.

Employee shall update the Company calendar on a daily basis with sales appointments, leads, and other important meeting and/ or task information vital to the sale and/ or maintenance of current or prospective projects. The Company shall be responsible for scheduling appointments or leads unless the Company directs Employee to make contact and set appointment. In either case, the Company shall notify the Employee with the information required to be present at the appointment on the correct day and time. As a general company policy, Employee and Company agree that the rescheduling of an initial appointment is to be avoided at all costs.

Employee will be entitled to vacation time granted that:   1. Employee gives a 2 week notice to the Company prior to departure, and 2.  Employee coordinates any current jobs and or activities vital to the progress of those jobs prior to departure.



**2. Compensation, Incentives and Expenses.**

For all services to be rendered by the Employee pursuant to Paragraph 1 of the Agreement, and in part of the consideration for the other obligations and promises of the Employee as set forth in this Agreement, the Company will compensate the Employee during the time he is employed by the Company as follows:

A) A commission based salary on each of the Employee's projects according to the following terms and conditions:

1.  Company and Employee determine the minimum percentage to be used on each individual job as follows:

| JOB COST | MINIMUM PERCENTAGE | MINIMUM SALE PRICE |
|---|---|---|
| $ 0 - $ 30,000 | 1.25 | Job Cost x 1.25 |
| $ 30,001 - $ 45,000 | 1.30 | Job Cost x 1.30 |
| $ 45,001 - $ 60,000 | 1.35 | Job Cost x 1.35 |
| $ 60,001 – and up | 1.38 | Job Cost x 1.38 |

The Minimum Percentage as shown above determines the Minimum Sale Price the job must be sold for unless agreed to otherwise between Company and Employee based on unique and/or competitive situations.

The difference in the dollar amount between the Job Cost and the Minimum Sale Price is awarded to the Company.

The remaining amount (the dollar difference between the Minimum Sale Price and the Actual Sale Price) is awarded to the employee in full up to a Maximum Percentage Sale of 1.58.

Any dollar amount of profit greater than the calculated Maximum Percentage Sale Price shall be shared evenly between the Company and the Employee (50% to Company, 50% to Employee).

If, when the job actually closes, the job cost is less than that initially calculated, and thus the Minimum Sale Price is affected (which in turn affects the payout schedule above), the amounts will be re-calculated and any additional commissions owed to the Employee (as calculated in the "AT CLOSE" section of the "COMMISSION CALCULATION FORM") will be awarded.

If, when the job actually closes, the job cost is for some reason greater than that initially calculated (see item #3 below) and thus the Minimum Sale Price is affected (which in turn affects the payout schedule above), the Company and Employee will discuss and assess the situation so that it is fair to both the Employee and the Company.

2.  Employee shall hand in the job price sheet to the Company with the sold job paperwork.
3.  Company and Employee will agree to the job cost evaluation and mutually fill out and approve/ sign a "COMMISSION CALCULATION FORM". This form will include the following information (see page 3):

2

# COMMISION CALCULATION FORM

## AT SALE

Actual Sale Price = _____

1. _____  x  _____  =  _____
      Job Cost        Min. Percentage        Min. Sale Price

2. _____  x  _____  =  _____
      Job Cost       Max. Percentage (1.58)     Max. Percentage
                                                                    Sale Price

If the Actual Sale Price is less than the Maximum Percentage Sale Price, then:

3. _____  -  _____  =  _____
   Actual Sale Price    Min. Sale Price     Employee Commission

IF the Actual Sale Price is greater than Maximum Percentage Sale Price, then also add the following:

4. _____  -  _____  =  _____ x .50 =  _____
   Actual Sale Price    Max. Percentage    Additional Profit     Additional
                   Sale Price                                         Employee
                                                               Commission

## AT CLOSE

Final commission payout (if job closes better than that initially calculated above):

If the Actual Sale Price is still less than the Maximum Percentage Sale Price, then:

5. _____  -  _____  -  Commission  =  _____
   Actual Sale Price     Actual Min.     Already Paid   Additional Employee
                    Sale Price                                Commission

IF the Actual Sale Price is greater than the Actual Max. Percentage Sale Price, then also add the following:

6. _____  -  _____  =  _____ x .50 =  _____
   Actual Sale Price    Actual Max. Percentage   Additional Profit    Additional Employee
                   Sale Price                                         Commission

3

4. Commissions will be paid to Employee as follows:
   a. 25 % of commission at contract signing
   b. 25 % of commission at submittal of project selections (i.e. plumbing fixtures, tile, appliances, etc) and plan approval by the customer to the company.
   c. 50 % at completion of project.
   d. Payment of remaining commission (if any) shall be determined at the close of the job according to item 2A1 of this Agreement and as filled out in the "AT CLOSE" section of the COMMISSION CALCULATION FORM.

5. Change Orders (C.O.) will be considered separate entities and will not affect the job commission as calculated and agreed to on the COMMISSION CALCULATION FORM. Employee shall hand in a separate cost sheet with each change order sold.
   All change orders will be sold according to the following criteria:

| CHANGE ORDER COST | MINIMUM PERCENTAGE | MINIMUM SALE PRICE |
|---|---|---|
| Under $ 3,000 | - | Company handles |
| $ 3000 - $ 5,000 | 1.25 | C.O. Cost x 1.25 |
| $ 5,001 - $ 10,000 | 1.30 | C.O. Cost x 1.30 |
| $ 10,001 - $ 25,000 | 1.35 | C.O. Cost x 1.35 |
| $ 25,001 – and up | 1.38 | C.O. Cost x 1.38 |

The Minimum Percentage as shown above determines the Minimum Sale Price the change order must be sold for unless agreed otherwise between Company and Employee based on unique and/ or competitive situations.

The difference in the dollar amount between the Change Order Cost and the Minimum Sale Price is awarded to the Company.

The remaining dollar amount (the difference between the Minimum Sale Price and the Actual Sale Price) is awarded to the employee in full up to a Maximum Sale Percentage of 1.58.

Any dollar amount of profit greater than the calculated Maximum Percentage Sale Price shall be shared evenly between the Company and the Employee (50% to Company, 50% to Employee).

4

B) The company will pay an advertisement incentive bonus of three hundred seventy five dollars ($275) per month to the Employee if he agrees to affix the Company logo in a conspicuous manner to his registered personal motor vehicle. The company agrees to tint the window areas that the advertisement is to be installed. This bonus is allowed for one vehicle per Employee. The Employee is still responsible for maintaining all loan payments, proper licenses, permits, registration, and insurance for the vehicle. The Company is not Liable for any insurance, maintenance, loan payments, damage or other acts of harm to the Employee or any other party as a result of the vehicle being driven.

C) Expenses that will be covered by the Company shall be approved and will include (but are not necessarily limited to):

General office supplies, copies, collating, binding
Design literature (design books, magazines, etc.)
Presentation materials (mounting boards, adhesives/ supplies)
Customer/ potential customer entertainment
Gifts for current or potential customers (flowers, fruit baskets, etc.)
Parking costs if required (i.e. Chicago/ downtown jobs)

D) Design retainers to be paid to the Employee as follows:

| PAYMENT | RESPONSIBILITIES |
|---|---|
| 1.  1/3 of design fee | Employee coordinates design,<br>Company draws,<br>Employee presents |
| 2.  2/3 of design fee | Employee designs<br>Employee draws<br>Employee presents |
| 3.  1/2 of design fee | Employee coordinates design<br>Company draws existing conditions only<br>Employ draws the rest<br>Employee presents |

**3. Form of payment.**

The employee is responsible for completing a Compensation Request for all compensation, incentives or expenses. All Compensation Requests must be submitted by 11:00 am on the Friday proceeding the scheduled pay period.

All payments shall be paid to the Employee in accordance with all applicable income tax withholding deductions required by law and other deductions (if any) as authorized by the Employee.

## 4. Term

This agreement for employment by and between the parties shall be an agreement for employment at will commencing on the date hereof, subject to immediate termination by the Company without notice or cause. If Employee wishes to terminate this agreement they must provide One (1) month notice of this intent to the Company.

Nothing contained in this Agreement shall be construed to prevent the Company from terminating the employment of the Employee hereunder at any time for cause. As used in this Agreement, "termination for cause" shall mean a termination based upon the dishonesty, gross negligence, incompetence or moral turpitude of the Employee or any failure to perform his duties hereunder or otherwise comply with and observe the covenants and agreements made by him herein.

## 5. Non-Competition

Unless express written exception to this paragraph is provided by executive officers of the Company, during the time of the Employee's employment by the Company, and for a period of One (1) year after termination, the Employee shall not, directly or indirectly, acting alone or in conjunction with others:
A) Request any customers of any business then being conducted by the Company to curtail or cancel their business with the Company;
B) Solicit, canvass or accept any business or transaction for any other person, firm or corporation or business similar to the business of the Company, from any past or existing customers of the Company;
C) Induce, or attempt to influence, any employee of the Company to terminate employment with the Company or to enter into any employment or other business relationship with any other person (including the Employee), firm or corporation; or
D) Act or conduct him or herself in any manner which is contrary to the best interests of the Company.

The Employee recognizes that immediate and irreparable damage will result to the Company if the Employee breaches any of the terms and conditions of this Paragraph 4 and, accordingly, the Employee hereby consents to the entry by any court of competent jurisdiction of an injunction against him to restrain any such breach, in addition to any other remedies or claims for money or damages which the Company may seek. The Employee represents and warrants to the Company his experience and capabilities are such that he can obtain employment in business without breaching the terms and conditions of this Paragraph 5 (and the enforcement thereof by injection or otherwise) will not prevent him from earning a livelihood. The Employee agrees to pay any and all reasonable attorney fees sustained by the Company in connection with any breach of this Agreement.

## 6. Trade Secrets/ Confidential Information/ Intellectual Property

The Employee agrees that he will not at any time or in any manner divulge, disclose or communicate to any person, firm or corporation any trade, technical or technical or technological secrets; any details of the Company's organization or business affairs, its manner of operation, its plans, processes, and/ or other data; any names of past or present customers of the Company; or any other information relating to the business of the Company, without regard to whether all of the foregoing matters will be deemed confidential, material, or important. The Employee further

6

agrees that all leads, files, forms, documents and logos created or used in the performance of his or her duties during the course of his or her employment are the property of the Company, and the downloading, copying or distribution of any of these or similar items without the express approval of the Company can result in immediate termination of employment and possible prosecution.

With respect to the foregoing, the Employee hereby stipulates and agrees that the same are confidential, material, and important, and any breach of this paragraph 6 will adversely affect the business of the Company, its effective and successful management, and its inherent good will.

### 7. Assignment

The benefits of this Agreement are and shall be personal to the Employee, and none thereof shall inure to the benefit of his heirs, personal representatives, or assigns. The obligations and duties of the Employee hereunder shall be personal and not assignable or delegable by him in any manner, whatsoever. This Agreement shall be binding upon and inure to the benefit of the Company and it shall be assignable by the Company to any entity which may acquire substantially all of the business and assets of the Company, or with or into which the Company may be merged or consolidated.

### 8. Entire Agreement, Amendment

This agreement constitutes the entire agreement between the parties with respect to the employment of the Employee by the Company and shall be deemed effective on the date of signing. Per discussion between the Employee and the Company, the previous written agreement between the Employee and the Company will be held effective for any and all jobs and change orders sold prior to the date of signing of this written Agreement. For all jobs sold prior to this Agreement but not yet completed (currently in progress or waiting to start construction), any and all change orders not yet sold shall abide by the new regulations set forth in this Agreement according to paragraph 2A5. This Agreement may be amended, modified or waived only by an instrument in writing signed by the Employee and an authorized executive officer of the Company.

### 9. General

The headings of the Articles and paragraphs of this Agreement are for the convenience of reference and not to be used to interpret or construe any provisions of this Agreement. This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written.

_____  9/19/07

_____  9/19/07

_____  9/19/07

7

# EXHIBIT B

LAW OFFICES

*Alan H. Shifrin & Associates, L.L.C.*

3315 ALGONQUIN ROAD, SUITE #202
ROLLING MEADOWS, ILLINOIS 60008

PHONE (847) 222-0500
FAX (847) 222-0375
info@ashiflaw.com

ALAN H. SHIFRIN
TERRY D. SLAW
JEFFREY S. MARKS
MICHAEL R. DIBENEDETTO
KIMBERLY LW SANDERS
*PARALEGAL*

CHICAGO OFFICE
BY APPOINTMENT ONLY

On December 26, 2007

*VIA U.S. MAIL AND FACSIMILE: (630) 963-4203*

Dan Holloway
President
Arience Builders, Inc.
4726 Main Street
Lisle, IL 60532-1724

       Re: <u>Scott Baltes</u>
       Our File No: 9499

Dear Mr. Holloway:

This office has been retained to represent the interest of Scott Baltes, a former employee of Arience Builders. Your company still owes commissions to our client from a number of projects on which he was the procuring cause. Please note that under the Illinois Wage Payment and Collection Act, employers are obligated to pay the final compensation of separated employees in full at the time of separation, if possible.

All of the requisite materials to determine his compensation are currently in your possession. Therefore, **please provide us an itemized list of outstanding commissions due Mr. Baltes**. For each item, be sure to include all of the necessary components for calculating his commissions (e.g., projects, change orders, sale prices, cost sheets, commission calculation forms, and all relevant dates). Please also include dates on which he can expect said payments and the amounts of those payments. Mr. Baltes requests to be paid via check and for all checks to be mailed to his residence.

Also, if any of Mr. Baltes' drawings or other materials are used by your company to procure any future sales, then he has a right to commissions for those sales as well. Accordingly, we request that you either return all of our client's work product for past and future projects or pay him all future commissions resulting from sales attributable to his work.



Last, please note that under your employment contract with our client, Mr. Baltes is free to contact any and all prospective customers of Arience Builders. He is also free to contact and work with any contractor or subcontractor with whom he has developed relationships while working at your company.

If you have any questions or would like to discuss this matter, then please feel free to contact our office.

Very truly yours,

Alan H. Shifrin (MD)
Attorney at Law

LAW OFFICES

## *Alan H. Shifrin & Associates, L.L.C.*

3315 ALGONQUIN ROAD, SUITE #202
ROLLING MEADOWS, ILLINOIS 60008

PHONE (847) 222-0500
FAX (847) 222-0375
info@ashiflaw.com

ALAN H. SHIFRIN
TERRY D. SLAW
JEFFREY S. MARKS
MICHAEL R. DIBENEDETTO
KIMBERLY LW SANDERS
*PARALEGAL*

CHICAGO OFFICE
BY APPOINTMENT ONLY

January 2, 2008

*VIA U.S. MAIL AND FACSIMILE: (630) 963-4203*

Dan Holloway
President
Arience Builders, Inc.
4726 Main Street
Lisle, IL 60532-1724

     Re: <u>Scott Baltes</u>
     Our File No: 9275

Dear Mr. Holloway:

As you know, this office has been retained to represent the interest of Scott Baltes, a former employee of Arience Builders. Per your request (via written correspondence dated December 18, 2007), Mr. Baltes has returned the following items to your company by dropping them off at the UPS Store located at 1042 Maple Avenue in Lisle:

     -one HP Photosmart printer (in box with all accessories)
     -one Canon Powershot SD400 digital camera (in box with all accessories)
     -19 Arience shirts
     -one Adobe Acrobat bundle CD
     -various forms and specification sheets
     -business cards
     -one surge protector
     -one computer power cord
     -one laptop lock cable with key

As we previously stated, your company still owes commissions to our client from a number of projects on which he was the procuring cause. The requisite materials to determine his compensation are currently in your possession. Therefore, per Illinois Compiled Statutes chapter 820, sections 155/5 and 115/14, and Department of Labor Administrative Rules section 300.510 regarding

commissions, we request an itemized list of outstanding commissions due Mr. Baltes **within ten days of your receipt of this letter**. You are obligated to fully comply with this itemization request. For each item, be sure to include all of the necessary components for calculating his commissions (e.g., projects, change orders, sale prices, cost sheets, commission calculation forms, and all relevant dates). Please also include dates on which Mr. Baltes can expect said payments and the amounts of those payments.

It is our philosophy that before we institute further action in any matter, we tender the opportunity for resolution. This letter is to afford you the courtesy opportunity to resolve the matter easily, before the collection process goes further.

Pursuant to the Fair Debt Collection Practices Act, 15 USCS 1692, et seq, you have certain rights concerning the claimed debt. You have the right to dispute the validity of the debt in writing within 30 days. Your failure to so dispute the validity of the debt will result in the debt being assumed valid. You have the right to request within 30 days, in writing, verification of the debt, or any portion of the debt which you dispute. If you so request a copy of verification it will be sent to you. You have the right to request, within 30 days, in writing, the name and address of the original creditor, if different from the named creditor.

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

If you have any questions or would like to discuss this matter, then do not hesitate to contact our office.

Very truly yours,

Alan H. Shifrin (MD)
Attorney at Law


cc: Scott Baltes

## CERTIFICATE OF SERVICE

I, Jeffrey S. Marks, an attorney, certify that service of Plaintiff's ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES AND COMPULSORY COUNTERCLAIM UNDER FEDERAL RULES OF CIVIL PROCEDURE 13(a) on Plaintiffs' counsel was accomplished pursuant to ECF.


By:/s/ Jeffrey S. Marks